H. AXELROD, RESPONDENT, v. J. P. PIERRON AND LEE AGEE, APPELLANTS.*

Kansas City Court of Appeals.   June 27, 1927.

*Corpus Juris-Cyc. References: Bailments, 6CJ, section 43, p. 1111, n. 37; Contracts, 13CJ, section 45, p. 262, n. 71; Damage, 17CJ, p. 697, n. 72; Evidence, 22CJ, section 1597, p. 1197, n. 39; Frauds, Statute of, 27CJ, section 329, p. 275, n. 32; section 471, p. 382, n. 79; Trial, 38Cyc, p. 1340, n. 98.

*Goodwin Creason, Edwin L. O'Neil* and *Ross B. Gilluly* for respondent.

*Harris & Koontz* for appellant Pierron.

*Miller, Winger & Reeder* and *David L. Sheffrey* for appellant Agee.

ARNOLD, J.—This is an action for specific performance of a written contract. There are two appeals from the judgment, numbered as above indicated, but as the cases were tried as one in the court below and submitted here under a joint abstract of the record and bill of exceptions, they will be considered and determined together.

The facts of record are that in the early part of the year 1919, defendant J. P. Pierron and one A. W. Ault were the owners of certain oil and gas leases in Dickinson county, Kansas, and elsewhere; that defendant Lee Agee was a member of the Agee-Block Realty Company and the Agee-Block Oil Company, with offices at 302 Commerce Building, Kansas City, Mo. Plaintiff lived in Bartlesville, Okla., and was engaged in buying and selling oil and gas well casings. It appears that one Martin Blumenfeld of many years' acquaintance with defendant Agee, made his headquarters with the Agee-Block Realty Company in Kansas City. Pierron and Ault desired to develop their oil and gas leases above referred to and entered into negotiations with plaintiff to procure from him casing to be used in the development of a well on one of their leases. A written contract was entered into which was prepared in the Agee-Block offices, in which Pierron and Ault were named as first parties and plaintiff as second party. The contract was signed by Pierron and Ault in said offices, and in a day or two thereafter, below the names of Pierron and Ault and below the space left

for plaintiff's signature, defendant Agee, in his office, and one H. E. Batterman, signed the following alleged guarantee, immediately below the signature of the contracting parties:

"We, the undersigned, hereby guarantee the carrying out of the above contract.

"Lee Agee
"H. E. Batterman."

It appears that defendants sent Blumenfeld with the contracts signed in triplicate as above indicated, to Bartlesville, Okla., to procure the signature of plaintiff who there signed them; that after the signature of plaintiff had been procured to the contract in triplicate, Blumenfeld took all the copies away with him and later mailed to plaintiff a purported transcribed copy thereof. In a deposition, Blumenfeld identified the transcribed copy of the contract sent plaintiff and which was attached to the petition filed herein, as a copy of the original contract. It appears that all of the said triplicate copies were lost, or could not be found, and none was introduced in evidence at the trial. The contract need not be set out here, but only so much thereof as may be necessary for the consideration of this appeal.

The contract provides, and the petition alleges, that defendants agreed, in the event of finding a producing well, that plaintiff should be paid for the casing at a price named in the contract, to-wit, $3.23 per linear foot for twelve inch casing, and $2.09 per foot for ten inch casing; the payment to be made, however, from the oil and gas produced from the well. After providing for the contingency of finding a producing well through the use of the casing, the contract provided:

"In case of a dry hole the parties of the first part shall compensate the parties of the second part for loss or damage of any casing and other equipment, natural wear and tear excepted. Balance of casing and other equipment shall be delivered by parties of the first part F. O. B. cars at the nearest railroad station, free of expense to party of the second part, within sixty days after a dry hole is completed."

And the contract further provides:

"It is further agreed and made a part of this contract that the parties of the first part shall hold harmless and reimburse the second party for attorneys' fees, costs or other expenses which they might be put to for reason of any litigation that might be commenced for any cause, whereby that property which is loaned to the first parties is involved, or any suit which they might be a party to."

The agreement was that plaintiff, as a consideration for the furnishing of the casing in question, was to receive one-eighth interest in the first well drilled and equipped with said casing to the top of the sand at the expense of Pierron and Ault; and an individual one-eighth interest in the oil and gas leases containing 160 acres upon which the well is to be located; the well to be drilled to a depth of 2500 feet unless oil or gas be found at a lesser depth, and should the well be drilled

deeper than 2500 feet, the same shall be at the expense of Pierron and Ault. The owners of the leases were also to assign to plaintiff a lease on an additional 160 acres, other than the direct offsets to the lease on which the well is to be drilled; the offsets being reserved by the lease owners.

It appears that plaintiff, in the performance of his obligations under the contract, shipped to defendants 500 feet, twelve inch and 1500 feet ten inch casing, loaded upon cars at shipping points. It is not disputed that the casing so loaded and shipped was received by defendants and placed upon the acreage where the well was to be drilled. The contract for the drilling of the well was let to the Bankers Oil Company; but the well was never drilled and the casing was left on the site for a long period of time. In preparation for drilling the well the Bankers Oil Company employed E. C. Houser and C. J. Mowry, doing business under the firm name of Houser & Mowry, to do some work relating thereto, at a total expense of $431. In order to collect this amount, Houser & Mowry brought suit in which they attached all the equipment on the site, including the casing in question, secured judgment and the said casing with the other equipment was sold to satisfy said judgment. In the case at bar, on objection of plaintiff, the trial court refused to allow the record in the attachment suit to be introduced in evidence, and this ruling is the basis of a charge of error on this appeal. After the drilling of the well was abandoned, it is in evidence that plaintiff, on numerous occasions, came to Kansas City and demanded of Pierron the return of the casing or pay for the same, under the terms of the contract. No payment was ever made to plaintiff and none of the casing was ever returned to him.

The petition was filed in October, 1922, and pleads the contract forming the basis of this suit; alleges that, under the contract, plaintiff was entitled to recover $4750, as the value of the casing, an attorney's fee of $500 and $100 expenses. Defendant Pierron, by his separate amended answer, admits signing the contract described in the petition and attached thereto; that plaintiff shipped the casing in question, and that the same was placed on said leased land; that Pierron and Ault conveyed a one-eighth interest in said well and quarter section of land and that plaintiff thereby became a joint owner in the lease; that the said casing, after delivery to plaintiff, was held in joint possession of plaintiff and Pierron and Ault; that, although plaintiff had agreed to lend the said casing for use in said oil well, the same was never so used; but that it remained upon said premises from about June, 1919, until July, 1922; that plaintiff knew said drilling had been abandoned but that he permitted said casing to remain on the premises with no attempt to remove it and without requesting defendant to deliver same to the nearest railroad station, but requested defendant to leave said casing on the premises and to try and sell it for plaintiff; that without defendant's knowledge or

consent, the said casing was taken and sold in an attachment suit of Houser & Mowry against the Bankers Oil Company.

Plaintiff's reply to the said amended answer admits Pierron and Ault conveyed to him the one-eighth interest as alleged in the answer but denies that plaintiff thereby took any partnership or interest in the drilling of said well; admits the casing was shipped to Dickinson county, Kansas, consigned to himself, but states that he sent the bill of lading to defendants, and that defendants took charge of said casing; and that the same was placed upon the land upon which the well was to be drilled.

In a separate amended answer, defendant Agee first makes general denial of the allegations in the petition, and specifically denies a promise to answer for the debts or default of others, and avers if there were any such promise it was not in writing; that if the alleged contract between plaintiff and defendants Pierron and Ault were executed, said Pierron and Ault conveyed an interest therein and plaintiff thereby became a joint holder with defendants Pierron and Ault in said casing. That, pursuant to the terms of the alleged written contract between defendants Pierron and Ault, plaintiff shipped said casing and that the same was held jointly by said Pierron and Ault; that plaintiff permitted said casing to remain on said premises from July, 1919, to July, 1922, and that· plaintiff requested defendant Pierron to leave said casing on the leased premises. The answer then pleads the taking and sale of said casing in the attachment suit above referred to.

The reply to the separate answer of defendant Agee is, in general, the same as the reply to the answer of defendants Pierron and Ault, and denies that plaintiff had anything to· do with the drilling of the well, that he ever requested defendants to sell the casing, but at all times insisted that the casing should either be returned or paid for.

Upon the pleadings thus made the cause went to trial to a jury. At the close of plaintiff's evidence, defendant Agee offered a peremptory instruction in the nature of a demurrer which the· court overruled. Defendant Agee stood upon his demurrer, taking no further part in the trial. Defendant Pierron offered no evidence excepting certified copies of the proceedings in the attachment suit in Kansas wherein the casing in question was alleged to· have been seized and sold under order of the court. The court refused to admit in evidence the certified copies of the said proceedings in attachment, and this ruling is made the basis of a charge of error on appeal. There was a verdict and judgment for plaintiff in the sum of $6960.20. Motions for a new trial and in arrest were filed in behalf of each defendant and overruled. Defendants have appealed and each. files a separate brief.

The first point presented for our determination is that urged by plaintiff to the effect that the brief of each defendant fails to comply

with the law and the rules of this court, in that neither of said briefs contains a clear and concise statement of the facts, nor do they, by reference to pages, point this court to the place or places where the facts may be found; and therefore that the appeals should be dismissed.

We have carefully examined the briefs against which the charge is directed and find them to be in substantial compliance with the law and the rules of this court; and the court is enabled therefrom, without difficulty, to grasp the facts presented in the record.

Under points and authorities in behalf of appellant Pierron it is urged (1) that, since the subject-matter of the bailment has been lost or destroyed, defendant is not liable to the plaintiff in the absence of negligence; (2) that the contract upon which plaintiff bases his action does not enlarge Pierron's common-law liability and does not constitute him an insurer of the casing involved; (3) that, as defendant's common-law liability was not enlarged by the specific inclusion of loss under a valid court order and process, by the terms of the contract defendant Pierron is not liable.

These points properly may be considered as one, involving that clause of the contract which reads: "In the case of a dry hole the parties of the first part shall compensate parties of the second part for loss or damage of any casing and other equipment, natural wear and tear excepted." While the contract in question provides for payment in case of "loss or damage" it has been held and is the law that "damage" means "loss and compensation would be inadequate that did not cover the loss sustained. [Turner v. Woodward, 51 S. E. 762, 123 Ga. 866.] In the same case it was held that "loss" and "damage" are used interchangeable. [3 Words & Phrases, 186.] Defendant's chief contention in this respect seems to be bottomed upon the theory that the transaction was a simple bailment and that the contract does not enlarge defendant's common-law liability so as to include the loss of the casing through a regular valid court order and process without his knowledge and consent; that this is true even though the contract be found to constitute defendant Pierron an insurer.

We are not impressed by this argument. We agree with plaintiff that the contract is not one of simple bailment. Paragraph "C" of the contract negatives defendant's position in this respect, as follows:

"In case of a dry hole, the parties of the first part shall compensate parties of the second part for loss and damage of any casing and other equipment, natural wear and tear excepted. Balance of casing and other equipment shall be delivered by parties of the first part to party of the second part, F. O. B. cars at the nearest railroad station, free of expense to party of the second part within sixty days after the dry hole is completed."

In the case of Sturm v. Boker, 150 U. S. 312, the court said: "The complainant's common-law responsibility as bailee exempted him from liability for loss of the consigned goods arising from inevitable accident. A bailee may, however, enlarge his legal responsibility by contract, express or fairly implied, and render himself liable for the loss or destruction of the goods committed to his care. . . . Such a liability could only be imposed upon him by a contract clearly expressing his assumption of the risk of destruction or his liability for the loss."

Likewise in Sanchez v. Blumberg (Tex.), 176 S. W. 904, the court said: "The parties to a bailment may substitute a special contract for the one implied by law. The bailee may be relieved of all liability or he may become an insurer, but his liability is not to be enlarged or restricted by words of doubtful meaning. The intent to vary the liability imposed by law must clearly appear."

We find the weight of authority to be that an agreement to return the bailment in good condition, ordinary wear and tear excepted, does not, in the absence of a stipulation to pay in case of nondelivery, indicate an intention to enlarge the common-law liability of the bailee. The general rule in this respect is stated in 6 C. J. 1111, 1112, paragraphs 43, 44, to the effect that the bailee may enlarge his legal responsibility by contract express or fairly implied. [Citing Supply Co. v. Commission Co., 166 Mo. App. 322, 148 S. W. 995.] That paragraph C of the contract does enlarge defendant Pierron's common-law liability is beyond doubt. The defendant therein agrees to compensate plaintiff for loss and damage of any casing, or other equipment, natural wear and tear excepted. This ruling is amply supported by the case of Supply Co. v. Commission Co., just cited and authorities therein found. If the words used in paragraph C of the contract are to be given their proper effect, we are unable to see how defendant may escape liability for the loss or damage to the casing while in his possession from any cause, ordinary wear and tear excepted, unless the contract expressly so provides. We think clause C of the contract broad enough to cover "loss and damage" through order and decree of a court in a suit between parties not interested in, nor parties to the suit at bar. An examination of defendant's citations and able brief discloses no law contrary to the above ruling. This point, therefore, is determined against defendant upon his assignments of error 1, 2 and 3.

Finally, it is charged the court erred in admitting testimony on behalf of plaintiff as to the value of services rendered by counsel for plaintiff in the prosecution and trial of the case at bar and in allowing expenses incurred by plaintiff for such trial, since damage is not contemplated by the contract. We think this argument is without substantial merit. We need go no further for a solution of this question than the clause in the contract which provides: "It is further

agreed and made a part of this contract that the parties of the first part shall hold harmless and reimburse second party for attorney fees, costs or other expenses, which they might be put to for reason of any litigation that might be commenced from any cause whereby that the property which is loaned to the first parties is involved, or any suit which they might be made a party to.''

The words ''attorneys' fees, costs or other expenses . . . for reason of any litigation that might be commenced from any cause whereby that the property which is loaned to the first parties is involved, or any suit which they might be a party to,'' must be held unambiguous and sufficiently broad to cover attorneys fees and expenses and that there was no error in the ruling of the trial court in admitting the evidence against which the complaint is lodged.

We now come to a consideration of the appeal of defendant Agee (No. 16003) which, while based largely upon the same points presented in the appeal of Pierron, yet involves questions not therein presented. In his brief, appellant Agee says:

''We have largely adopted the statement of facts as contained in defendant Pierron's brief; and, second, because we have adopted various of the points and authorities of defendant Pierron, and, third, because any liability on the part of defendant Agee must be predicated on a liability shown to exist in the defendant Pierron.''

In an additional statement of facts in behalf of defendant Agee it is stated:

''At the bottom of the contract entered into between plaintiff Axelrod, as one party, and defendants J. P. Pierron and his partner A. W. Ault as the other parties, and underneath the signatures of all of said parties appears the following statement signed by defendants Lee Agee and H. E. Batterman:

'' 'We hereby guarantee the carrying out of the above contract.' ''

It is also stated that it is upon this purported statement of guaranty that the defendant Lee Agee has been made a party defendant in this action, the plaintiff alleging in his petition that defendants Agee and H. E. Batterman, as a part of the execution of the principal contract, guaranteed in writing the carrying out of said contract. It is also stated that at the time of the trial plaintiff dismissed as to A. W. Ault and H. E. Batterman.

The answer of defendant Agee is substantially the same as that of Pierron, excepting that defendant Agee raised the question of the Statute of Frauds. In further addition to the statement of facts contained in the brief of defendant Pierron, it is stated plaintiff offered in evidence various letters comprising exhibits 1, 2, 4, 5 and 6, purporting to be letters written on stationery carrying the following letterheads:

"Lee Agee                  Max M. Block

"AGEE-BLOCK

"Realty and Building Company
"Business Property—Modern Homes
  "Suite 302 Commerce Building
"Telephone Main 2100

"Kansas City, Mo."

In some instances these letters were signed Agee-Block Realty & Building Co., by J. P. Pierron, and in others Agee-Block Oil Co., by J. P. Pierron, and in one instance, merely signed J. P. Pierron. The letters were addressed to plaintiff and refer to matters connected with the shipment of the casing involved herein. Plaintiff further read in evidence letters addressed to Foster & O'Neil, attorneys for plaintiff at Bartlesville, Okla. These letters comprise plaintiff's exhibits 7, 8 and 9, and were written on the same letterhead as the prior exhibits mentioned, but were signed J. P. Pierron. These letters, though read in evidence, were not offered nor admitted against defendant Agee. It is admitted, as above stated, that any liability on the part of defendant Agee, as alleged guarantor, must be predicated upon a liability existing in defendant Pierron.

Defendant Agee then proceeds to reiterate the arguments employed by Pierron which, it is insisted, exonerates Pierron from liability as follows: (1) That the contract between plaintiff and Pierron and Ault was a simple bailment and therefore Pierron is not liable, since plaintiff does not allege nor prove negligence on the part of Pierron in the loss of the casing and, therefore, under this hypothesis, Agee could not be liable. (2) That there is nothing in the contract which would extend the common-law liability of Pierron, nor constitute him an insurer. (3) That even if the contract be so construed as to constitute Pierron an insurer, he would none the less be exempt from liability where the subject-matter of the bailment, without his knowledge or consent, was taken from the premises by the majesty of the law; and (4) that expenses and attorney fees in connection with this action are not contemplated by the contract.

As we have already discussed and decided all these points against defendant's contention in our consideration of the appeal of Pierron, we shall not discuss them further.

It is insisted that in no instance could the purported guaranty of defendant Agee make him liable for a loss from which defendant Pierron is exonerated. However, as we hold herein that defendant Pierron is not without liability, the above observation could have no probative force here.

It is vigorously insisted the court erred in its interpretation and construction of the guaranty of defendant Agee. In this connection it is urged that the main contract is one containing mutual and dependent stipulations as between plaintiff Axelrod and Pierron and

Ault, and that it is upon the statement reading "We, the undersigned hereby guarantee the carrying out of the above contract," plaintiff is attempting to hold defendant Agee liable as guarantor for the alleged breach of the contract. Defendant Agee contends that the guarantee statement is inadequate, indefinite and too uncertain to constitute a valid or binding contract of guaranty, and that plaintiff failed to adduce sufficient evidence to support the construction placed upon it by the trial court that it was, in fact, a guaranty of performance by Pierron and Ault; and that whatever testimony plaintiff may have introduced was incompetent and not properly admissible. The general rule applicable hereto is stated in 13 Cyc. 262, as follows:

"It is necessary to the validity of a written contract that the contracting parties be described and the rules of certainty applicable to other essentials of the contract are applicable to the specification and determinability of the parties thereto." [North Packing, etc., Co. v. Lynch (Mass.), 81 N. E. 891; Clark v. Ry. Co., 81 Fed. 283.] We are unable to agree with defendant's position in this respect. The testimony shows that the alleged guaranty was written on the same page as the contract between plaintiff and Pierron and Ault.

In Carrick v. Mincke, 60 Mo. App. 140, it was held that the essentials of a contract for the sale of land are (1) that the lands are sufficiently described to identify it; (2) that the vendor and vendee shall be named, or in some way designated in the contract; (3) that the memorandum show who are the parties by some reference sufficient to identify them. [Rucker v. Harrington, 52 Mo. App. 481.]

There can be no question but that the parties are so designated in the memorandum and contract in the case at bar and that the alleged guaranty refers to the contract in question. It is defendant's position that the guaranty memorandum, within its own wording, does not designate the parties, but we think this is not necessary where the testimony shows as it does here that the contract was signed by Pierron and Ault and also by the alleged guarantors before the signature of the plaintiff was attached. This point was discussed and determined by the Supreme Court in Wiley v. Robert, 27 Mo. 388, 390, as follows:

"The title of the partition suit being placed at the head of the memorandum of the sale connected the papers in that case with the memorandum, for the purpose of this inquiry, as perfectly as if they had been specially referred to and made a part of it; and therefore it was not necessary to resort to parol evidence in order to connect other papers with it, to show the agreement of the parties and to establish a valid contract."

In the light of the law and of the evidence adduced herein, we think the guaranty clause is sufficient identification. At best, it can be held that the memorandum is merely ambiguous and in such case, testimony explanatory thereof is admissible. The ambiguity is patent on the face of it, and the general rule, as laid down in 22 C. J. 1197

et seq., is that parol evidence is admissible to explain the ambiguity, or to show the circumstance surrounding the transaction. [Franklin Ave. Savings Inst. v. Board, 75 Mo. 408; Banner Lumber Co. v. Lund, 184 Mo. App. 274, 165 S. W. 389.] Defendant insists the alleged guaranty memorandum is void under the Statute of Frauds, but what we have just said carries with it a ruling against this contention. It cannot be successfully contended that the memorandum is perfect and complete within itself so as to render it an artificially drawn contract, but it is sufficiently definite and certain on its face, together with the parol evidence, to explain and apply it to the contract to which it is appended; and the Statute of Frauds does not apply. In this view of the case there was no error in the admission by the trial court of the parol evidence complained of. We have examined the citations in defendant's most excellent brief, but find therein nothing substantially contrary to the above ruling. It is proper, under the law, to show the circumstances surrounding the whole transaction and the relationship of the parties taken in connection with the written contract and the guaranty written thereon. This has been done herein and we think properly.

It is defendant Agee's contention that the court erred in refusing to admit in evidence certified copies of the attachment suit in Kansas by which the casing was attached and sold. There was no error in this respect, plaintiff not having been a party to that suit. As we have determined this point against defendant's contention in our discussion of the appeal of defendant Pierron (case No. 16004), we need not prolong the discussion here.

As to defendant's contention that the court erred in admitting in evidence the letters comprising plaintiff's exhibits 1, 2, 4, 5 and 6, discussed in the Pierron appeal, we need only say that they were obviously admitted for the purpose of showing the circumstances surrounding the entire transaction. Defendant Agee insists they were admitted for the purpose of showing agency in Pierron, but if they were admissible for any purpose, the court cannot be convicted of error in their admission. There was no error in the action of the trial court in overruling defendant Agee's demurrer to the evidence.

Finding no reversible error of record, the judgment as to both defendants is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.