John L. SHOFLER, Plaintiff-Respondent,

v.

George JORDAN, Defendant-Appellant.

No. 7384.

Springfield Court of Appeals.

Missouri.

Dec. 6, 1955.

Walker, Daniel, Clampett & Rittershouse, Springfield, for defendant-appellant.

William C. Myers, Jr., Webb City, for plaintiff-respondent.

STONE, Judge.

Defendant appeals from a judgment of $1,500 entered upon a jury verdict following trial of this suit on an alleged express oral contract. In determining the meritorious question on appeal, i. e., whether defendant's motion for a directed verdict at the close of all of the evidence should have been sustained, we consider the evidence in the light most favorable to plaintiff, giving to him the benefit of all favorable inferences arising from the evidence and disregarding defendant's evidence except insofar as it may aid plaintiff's case. Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 870(6); Moore v. Middlewest Freightways, Mo., 266 S.W.2d 578, 579(1); Colley v. Cox, Mo.App., 266 S.W.2d 778, 780(1).

The express oral contract alleged in plaintiff's amended petition was "that if plaintiff would ride a sorrel mare purportedly belonging to defendant, that defendant would pay all damages or losses sustained by plaintiff in the event that he was injured from the riding of said sorrel mare." The mare was being trained by one Lewis F. Leer at his place near Log City in Jasper County, Missouri. According to plaintiff, Leer had stated (although not in defendant's presence) that defendant "had bought this mare from a Mr. Koelke * up near Lockwood." All of the other evidence was to the effect that Koelke took the mare to Leer's place, arranged for Leer to train her, furnished the feed, and paid for the training; that, following plaintiff's injury on Sunday, April 12, 1953, Koelke took the mare to another trainer in Springfield; and, that Koelke, not defendant, owned the mare. However, in view of plaintiff's theory of recovery on an express oral contract, ownership of the mare obviously was not important, as was recognized in plaintiff's principal verdict-directing instruction which simply referred to "a certain sorrel mare" and required no finding as to ownership thereof. In any event, defendant and his wife had looked at the mare at Koelke's farm before she had been taken to Leer's place, and they admittedly were interested in acquiring the horse after she was broken and trained.

At the time of his injury, plaintiff was twenty-four years of age, lived in Carterville, and was employed by Atlas Powder Company. He had known Leer for about ten years and, at one time, had worked for him "just taking care of horses." On Thursday, April 9, 1953, plaintiff uneventfully rode the mare at Leer's request and at his place. When defendant Jordan, accompanied by his wife, three of their minor children and his father-in-law, went to Leer's place on the afternoon of Sunday, April 12, 1953, to see how the mare was "coming along," Leer contacted plaintiff and "said that Mr. Jordan was up to his place and wanted me to ride the mare." Being assured by Leer that "it wouldn't take very long," plaintiff took his own saddle and drove to Leer's place in his own automobile, where he saw defendant for the first time. "Before I put the saddle on (the mare), I (plaintiff) told Mr. Leer that I couldn't afford to take any chances on riding one as silly as she was acting." Defendant was standing "approximately two steps" distant and, in the language of plaintiff's counsel embodied in a question which elicited an affirmative answer from his client, defendant was "taking part in the conversation." As given on *direct* examination, plaintiff's account of the conversation claimed to have constituted the express oral contract, on which he sues, was: "And Lewis (Leer) said, 'Well, there is nothing to worry about.' He said, 'She isn't going to do anything. She will be just like she was last Thursday. But,' he said, 'we will take care of anything in the event

that something does happen.' He said, 'There is nothing for you to worry about.' And Mr. Jordan nodded his head and said, 'Yes.' And so I took it for granted that Mr. Leer was speaking for Mr. Jordan." Plaintiff's account of the same conversation on *cross*-examination was: "He (Leer) said, 'She isn't going to do anything so there is nothing for you to worry about. In the event she does,' he said, 'we will take care of you.'" Because of this "promise," plaintiff tried to ride the mare, but she "reared up and fell over." Notwithstanding a cautionary warning by Mrs. Leer that "you might get hurt," plaintiff remounted the mare which promptly reared up and "fell over again," this time breaking plaintiff's right leg. Accepting plaintiff's version of the matter for the purpose of appellate review, we pass without consideration the positive and unequivocal testimony of defendant, his wife and the Leers that there was no such conversation as that related by plaintiff and that he undertook to ride the mare on Sunday, as he concededly had done on the previous Thursday, without any "promise" having been made to him.

█ Of course, the first essential of a valid contract is the existence of two or more competent parties who agree [Gillen v. Bayfield, 329 Mo. 681, 46 S.W.2d 571, 574(1); State ex rel. St. Louis Car Co. v. Hughes, 348 Mo. 125, 152 S.W.2d 193, 198(6); Restatement of Law of Contracts, Vol. I, Section 15, p. 17]; and it would seem to be self-evident that, although the parties need not be named formally [Corbin on Contracts, Volume 2, Section 500, p. 690], there can be no enforceable agreement unless the contracting parties may be identified with reasonable certainty. Axelrod v. Pierron, 222 Mo.App. 201, 297 S.W. 151, 155; Clark v. Great Northern Ry. Co., C.C.Wash., 81 F. 282, 283; Virginian Export Coal Co. v. Rowland Land Co., 100 W.Va. 559, 131 S.E. 253, 262(5); North Packing & Provision Co. v. Lynch, 196 Mass. 204, 81 N.E. 891(1); Marshall v. White's Creek Turnpike Co., 47 Tenn. 252; Webster v. Ela, 5 N.H. 540. Having in mind that the mare in the instant case was owned by Koelke and not by defendant, that Mrs. Leer and Mrs. Jordan were standing nearby at the time, and that, in the conversation on which plaintiff relies, Leer said only that "*we* will take care of anything" or "*we* will take care of you," we are by no means satisfied that, upon the record before us, any court or jury might identify with reasonable certainty the parties to the alleged oral agreement. But, believing that there are even more serious legal impediments to plaintiff's recovery, we do not rest our decision upon uncertainty or indefiniteness as to the contracting parties.

█ It is elementary and fundamental that, to make a valid contract, "(t)he parties must have a distinct intention, common to both, and without doubt or difference" [Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 124 S.W.2d 1111, 1116 (8); 17 C.J.S., Contracts, § 31, p. 359], and that the minds of the contracting parties must meet upon and assent to the same thing in the same sense and at the same time. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062(8); Green v. Cole, 103 Mo. 70, 15 S.W. 317, 318; Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 113 S.W. 703, 704(2). Likewise, it has long been settled that, for a contract to be valid and enforceable, the essential terms thereof must be certain or capable of being rendered certain through application of the ordinary canons of construction or by reference to something certain [Wesson v. Horner, 25 Mo. 81; Bay v. Bedwell, Mo.App., 21 S.W.2d 203, 205(1); Hubbard v. Turner Department Store Co., 220 Mo.App. 95, 278 S.W. 1060, 1061(3); Burks v. Stam, 65 Mo.App. 455, 460(2); Restatement of Law of Contracts, Vol. I, Section 32, p. 40; 17 C.J.S., Contracts, § 36c, p. 364], or, as the same thought has been expressed frequently in other language, that the terms of the agreement must be sufficiently definite to enable a court to give it an exact meaning. Brown v. Childers, Mo.App., 254 S.W.2d 275, 280(2); Williston on Contracts (Rev. Ed.), Vol. I, Section 37, p. 98; 12 Am. Jur., Contracts, Section 64, p. 554.

■ What plaintiff in the instant case "took * for granted" is unimportant and immaterial, for whether a contract is made and, if so, what the contract is depend upon what is actually said and done and not upon the understanding or supposition of one of the parties. Brown v. Childers, supra, 254 S.W.2d loc. cit. 280(3); Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo.App., 176 S.W.2d 635, 646(15); Home Trust Co. v. Shapiro, 228 Mo.App. 266, 64 S.W.2d 717, 731(20). In other words, the meeting of the minds essential to formation of a contract may not be found or determined on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested by their words or acts. McClintock v. Skelly Oil Co., 232 Mo.App. 1204, 114 S.W.2d 181, 189(7); Seavy & Flarsheim Brokerage Co. v. Monarch Peanut Co., Mo.App., 241 S.W. 643, 644(1); Brewington v. Mesker, 51 Mo.App. 348, 356(2).

The essence of the "promise," on which plaintiff said that he relied, was that "she (the mare) isn't going to do anything" but "we will take care of anything in the event that something does happen" or "in the event she does, we will take care of you." *If* these statements by Leer, followed by the nodding of defendant's head and his single spoken word "yes," constituted a contract between plaintiff and defendant, what were its essential terms and exact meaning? In the light of Leer's testimony that, as plaintiff was preparing to mount the mare, Leer was attempting to hold her with "a new rope with a new snap on it" wrapped around a post to which he frequently tied horses, and that, after "the snap broke" and plaintiff was unhorsed the first time, Leer said that "if you (plaintiff) are going to ride her I think I better put a rope on her to hold her with the rope," Leer's quoted "promise" might well be regarded as no more than a simple assurance that the mare would be held in check if she attempted "to do anything."

But assuming, without however so holding, that the "promise" to "take care of anything" or to "take care of you" related to *financial* "care," what did it mean? Was it a promise to provide "care" encompassing not only reimbursement for expenses and lost wages but also payment for physical pain and mental anguish resulting from any injury, as plaintiff apparently interpreted the promise when his *original* petition (against Leer and Jordan) was filed in which he alleged an agreement "that defendants would pay all *damages* sustained by plaintiff," averred his "physical and mental pain and injury," and sought to recover *$10,000?* Or, was it a promise to provide "care" restricted to reimbursement for actual medical and hospital expenses and for lost wages, as plaintiff apparently interpreted the promise when his *amended* petition (against Jordan alone) was filed in which he alleged an agreement "that defendant would pay all *damages or losses* sustained by plaintiff," made no mention of physical pain or mental anguish, and sought to recover *$1,715.57*, the sum total of actual medical and hospital expenses of $132.17 and lost wages of $1,583.40? And, although plaintiff's counsel begs the question by arguing that "the promise was definite enough that neither the trial judge nor the twelve jurors had any difficulty in interpretation," the verdict for *$1,500* belies the quoted conclusion and leaves us in a quandary as to how the jury interpreted the alleged promise.

■ Aware of the fact that "(v)agueness, indefiniteness, and uncertainty are matters of degree, with no absolute standard for comparison" [Corbin on Contracts, Volume 1, Section 95, pp. 288, 289] and that general principles must be applied in each instance with common sense and in the light of experience, careful consideration of the record before us impels the conclusion that the language of the alleged "promise" in the instant case was too general and indefinite to be the basis of a contract [Farren v. McNulty, 277 Pa. 279, 121 A. 501, 502(1)] and that this case is clearly within the principle that a contract is not sufficiently definite and certain to be valid and enforceable unless a court

can determine therefrom *the measure of damages* in the event of a breach. Ingram-Day Lumber Co. v. Rodgers, 105 Miss. 244, 62 So. 230, 231, 48 L.R.A.(N.S.) 435; 12 Am.Jur., Contracts, Section 64, pp. 554, 555. See and compare Fay v. Missouri Power & Light Co., Mo.App., 33 S.W.2d 1056, 1057–1058(2); Crowell v. Houde Engineering Corp., Mo.App., 19 S.W.2d 516, 518(2); Hubbard v. Turner Department Store Co., supra.

■■■ In the furtherance of substantial justice, no case should be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had [East v. McMenamy, Mo., 266 S.W.2d 728, 732(7), and cases there cited]; but where, as here, the facts have been developed fully, all available witnesses on the material issues have testified, and it is clear that plaintiff is not entitled to recover [Wright v. Kansas City Structural Steel Co., 236 Mo. App. 872, 157 S.W.2d 582, 592(12); Lappin v. St. Louis Nat. League Baseball Club, Mo.App., 33 S.W.2d 1025, 1027–1028(4)], it becomes our plain duty to dispose of the case finally. Section 512.160(3), RSMo 1949, V.A.M.S.; Krueger v. Elder Mfg. Co., Mo.App., 260 S.W.2d 349, 353 (5); Trantham v. Gullic, Mo.App., 201 S.W.2d 522, 530(11). Accordingly, the judgment for plaintiff is reversed and the cause is remanded with directions to enter judgment for defendant.

McDOWELL, P. J., and RUARK, J., concur.