VIACOM OUTDOOR, INC.,
**Respondent,**

v.

**Max TAOUIL, Appellant.**

**No. ED 89022.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 27, 2008.

Theodore D. Dearing, Dearing & Hartzog, L.C., St. Louis, MO, for appellant.

Hilary H. Sommer, Mary G. Walsh, Martin, Leigh, Laws & Fritzlen P.C., Clayton, MO, for respondent.

KENNETH M. ROMINES, Judge.

## Introduction

This is a breach of contract case. Here we consider whether the trial court's finding of a contract between Viacom Outdoor Inc. ("Viacom") and Max Taouil ("Taouil") is supported by the record. We reverse the judgment of the trial court and hold that the overwhelming weight of the evidence does not support the finding of a contract between Viacom and Taouil.

## Factual and Procedural Background

In December 2002, Viacom Outdoor Inc. ("Viacom"), was a company that provided outdoor billboard advertising services throughout North America.[1] Fourth and Washington, LLC., was a Missouri company d/b/a W.S. on Washington. W.S. on Washington was a hotel located on the corner of 4th and Washington in St. Louis, MO. Max Taouil ("Taouil") was the manager of the Mandarin Bay, a restaurant located within the W.S. on Washington hotel.

On or about 12 December 2002, Viacom entered into a Bulletin Agreement ("Agreement") with W.S. on Washington whereby Viacom agreed to provide three months of outdoor billboard advertising services for W.S. on Washington, and W.S. on Washington agreed to pay Viacom $12,000 for said advertising services. The Agreement was signed by Kyle Dorton for Viacom, William Stallings Jr. for W.S. on Washington, and Max Taouil. Taouil testified at trial that when he signed, his name was not in the Agreement, and by signing he believed he was simply giving permission for his artwork and logo to be placed on the billboard.

Viacom provided the requested outdoor billboard advertising services in accordance with the terms of the Agreement. The center of the billboard read, "WS on Washington—St. Louis' Hottest Hotel." The right side of the billboard contained the words, "Mandarin Bay Restaurant" with an accompanying graphic. The bottom of the billboard read, "4th & Washington—314–231–1100." However, neither Taouil nor W.S. on Washington paid Viacom, in full, for the advertising services.[2]

Viacom commenced legal action for breach of contract on 15 February 2005 in the Circuit Court of the City of St. Louis, against Max Taouil and W.S. on Washington. W.S. on Washington failed to appear in the action. Taouil appeared by filing an answer. Viacom's evidence at trial consisted of testimony of Viacom employee Kenneth Mihill and the deposition testimony of Viacom sales representative Cheryle Young–Ganahl. Taouil's evidence at trial consisted of his own testimony. During trial, Taouil objected to admitting certain portions of Ganahl's deposition testimony into evidence as hearsay. The trial court overruled Taouil's objection and admitted Ganahl's entire deposition testimony into evidence.

The trial court issued its Order and Judgment on 29 September 2006, wherein it found in favor of Viacom and against Taouil in the sum of $8,500. The trial court also awarded Viacom a default judgment against W.S. on Washington in the sum of $8,500. On or about 25 October 2006, Taouil filed a motion for a new trial. That motion was denied on 30 November 2006, and this appeal followed.

---

1. Viacom has since changed its name to CBS Outdoor.

2. Viacom employee Kenneth Mihill testified at trial that two monthly payments had not been paid, resulting in $6,800 still owing on the account.

## Standard of Review

The standard of review in this case is established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Under *Murphy*, the decree or judgment of the trial court will be sustained by this Court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. We exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong. *Id.*

## Discussion

Taouil raises two issues on appeal. First, Taouil claims the trial court erred in finding a contract existed between Viacom and Taouil in that there was no substantial evidence to support the finding of the existence of an express agreement between Viacom and Taouil and that such a finding was against the weight of the evidence. Second, Taouil argues the trial court erred in admitting into evidence portions of the deposition testimony of Cheryle Young–Ganahl concerning the statements made to her by William Stallings, in that such evidence was hearsay and not admissible under any exception to the hearsay rule. For organization's sake, we address Taouil's points on appeal in reverse order.

## Deposition Testimony

■ Taouil claims the trial court erred in admitting into evidence portions of the deposition testimony of Cheryle Young–Ganahl concerning the statements made to her by William Stallings, in that such evidence was hearsay and not admissible under any exception to the hearsay rule. We agree.

At trial, the court admitted into evidence, over objection, the deposition testimony of Ganahl, which included several references to statements made by William Stallings to Ganahl, indicating that he and Taouil had made some sort of side agreement that Taouil would pay a portion of the advertising furnished by Viacom. Taouil contends the court erred in that these portions of Ganahl's deposition are hearsay. Viacom argues that the statements made by Stallings to Ganahl were exceptions to the hearsay rule as Stallings was a party to the action and his statements constituted admissions of a party opponent. Viacom further argues that even if this Court found the hearsay evidence inadmissible, the error is not reversible as Taouil was not prejudiced. *See Howe v. ALD Services*, 941 S.W.2d 645, 654–655 (Mo.App. E.D.1997).

■ Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. *Nettie's Flower Garden, Inc. v. SIS Inc.*, 869 S.W.2d 226, 229 (Mo.App. E.D.1993). Hearsay is ordinarily not admissible unless it falls under one of the exceptions to the hearsay rule. *Id.* While admissions of a party opponent are exceptions to the hearsay rule, it is well established under Missouri law that "admissions of a co-defendant are not admissible against another co-defendant merely because of one's being a co-party to litigation." *Gordon v. Oidtman*, 692 S.W.2d 349, 355 (Mo.App. W.D.1985); *Bell v. United Parcel Service*, 724 S.W.2d 682, 685 (Mo.App. E.D.1987). Here, the portions of Ganahl's deposition containing statements made by Stallings to Ganahl regarding a side agreement between Stallings and Taouil are inadmissible. Stallings is clearly a co-defendant in this action along with Taouil and his admissions are being used against Taouil. The trial court erred in admitting the hearsay portions of

Ganahl's deposition. This error prejudiced Taouil in that the trial court specifically relied on certain hearsay statements in finding a contract existed between Viacom and Taouil.[3] The trial court should not have admitted these statements; or, at the very least, should have ignored them. Accordingly, we grant Taouil's first point on appeal.

### Existence of a Contract

Taouil further claims the trial court erred in finding a contract existed between Viacom and Taouil in that, absent the inadmissible hearsay evidence, there was no substantial evidence to support a finding of the existence of a contract between Viacom and Taouil and that such a finding was a against the weight of the evidence.

"To establish a submissible case of breach of contract, a plaintiff must first establish the existence of an agreement." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994). In order for a contract to be formed, the parties must mutually assent to its terms. *Id.* In other words, "the parties must have a distinct intention, common to both, and without doubt or difference, and ... the minds of the contracting parties must meet upon and assent to the same thing in the same sense and at the same time." *Macy v. Day*, 346 S.W.2d

555, 558 (Mo.App.1961). "The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact." *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App. E.D.1998).[4]

Taouil claims there is no substantial evidence supporting a finding of a mutual agreement between him and Viacom and that such a finding is against the overwhelming weight of the evidence. We agree. The record reveals not even a modicum of evidence showing a meeting of the minds between Viacom and Taouil.

Cheryle Young–Ganahl ("Ganahl"), Viacom's sole sales representative involved in this transaction, admitted in her deposition testimony that there were no negotiations between her and Taouil regarding advertising services. Further, Ganahl admitted that she did not even speak to Taouil nor anyone else at Mandarin Bay restaurant during the negotiations of the Agreement. Ganahl further admitted that when she prepared the contract, she did not include Taouil's name anywhere on the contract, nor did she expect Taouil to sign the contract, either as a party or as a guarantor. Further, Kenneth Mihill ("Mihill"), a Viacom employee, admitted at trial that Viacom never attempted to collect

---

**3.** In its Judgment the court states that "the Plaintiff's sales representative was led to believe that Defendant's restaurant was sharing the billboard with the hotel and was equally responsible for payment."

**4.** Regarding parol evidence, courts are bound to enforce a contract as written if the terms of the contract are clear, plain and unequivocal. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626–627 (Mo. banc 1997). However, if a contract is ambiguous, then parol evidence will be considered to determine the intent of the parties. *Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 256 (Mo.App. E.D.2000). A contract must be shown to be

ambiguous before extrinsic evidence may be used to show the correct meaning of the term. *Young Dental Mfg. Co. v. Engineered Products, Inc.*, 838 S.W.2d 154, 157 (Mo.App. E.D. 1992). Here, the trial court made no findings regarding the ambiguity of the contract before it admitted extrinsic evidence and relied on that evidence in finding the existence of a contract between Viacom and Taouil. Nevertheless, as neither party claims the trial court erred in admitting and considering parol evidence in its judgment, we do not review that issue on appeal. We review the record and all evidence included therein.

any payments from Taouil or Mandarin Bay Restaurant. Given these facts, we are unconvinced that a "meeting of the minds" could have possibly taken place.

 A point of particular significance is the fact that once the contract was drafted, Taouil's name was not included anywhere in the body of the contract. "The general rule supported by the courts is substantially to the effect that when the body of a contract purports to set out the names of the parties thereto and a person not named in the body of the contract signs the contract, and there is nothing in the contract to indicate that such person signed as a party, such person is not bound by the contract and hence is not liable thereunder." *CMT Partners v. Alaiwat*, 969 S.W.2d 885, 887 (Mo.App. W.D.1998).[5][6]

Here, it is clear the Agreement sets out the names of the parties in the body of the contract and Taouil's name does not appear. Further, there is nothing in the contract indicating that Taouil signed as a party. Had Viacom desired for Taouil to be a party to the Agreement or that he be liable on the contract in any way, Viacom could have easily put his name in the Agreement or included language personally obligating Taouil. No such language appears.

In response to Taouil's argument, Viacom points solely to Taouil's signature on the Agreement as sufficient evidence for the finding of a mutual agreement. Placing much emphasis on *Wired Music Inc. of the Great Midwest v. Great River Steamboat Co.*, 554 S.W.2d 466 (Mo.App. E.D. 1977), Viacom points out that Taouil voluntarily signed the contract and emphasizes that, "one who signs a contract is presumed to have known its contents and accepted its terms." *Id.* The *Wired* case does not help Viacom. It does state that the failure to read the contract is not a defense; however, this Court ultimately held that the signatory of the contract in *Wired* was not personally liable because there was insufficient evidence establishing that the signatory intended to personally obligate himself on the contract. *Id.* at 471. The facts of *Wired* are different from those in the case at bar; nevertheless, the reasoning and holding in *Wired* affirms that the main consideration in determining the existence of a contract is the intent of the parties.

Here, there is no language in the Agreement obligating Taouil. Neither is there any evidence of Taouil's intent or Viacom's intent to be bound. Taouil testified that he signed the Agreement at the behest of his attorney, without reading it, believing he was giving permission for his Restaurant's logo to be used in the advertisement. The fact that he signed it, however, is not dispositive of his intent to be bound.

---

5. Viacom argues that the general rule cited in *CMT* is inapplicable here because *CMT* was applying Kansas rather than Missouri law. While we agree that the *CMT* case involved a conflict of laws issue in which Kansas law applied, the general rule cited in *CMT* is not Kansas specific, rather it is a general rule of contract construction followed by numerous states. 17A Am.Jur.2d *Contracts* § 423 (1991). Accordingly, the general rule cited in *CMT* is not inapplicable here solely because *CMT* applied Kansas law.

6. We were able to find only one case under Missouri law which takes exception to the general rule cited in *CMT*. In *Axelrod v. Pierron*, 222 Mo.App. 201, 297 S.W. 151 (1927), the court held a man liable on a contract which he signed but was not named as a party thereto in the body of the contract. *Axelrod* is distinguished from the present case, however, because in *Axelrod*, the man held liable on the contact signed as a guarantor on the contract, whereas here, no language exists in the Agreement suggesting Taouil signed as a guarantor.

The overwhelming evidence on the record suggests Taouil had no intention of contracting with Viacom. Neither did Viacom intend to contract with Taouil. Viacom did not negotiate with Taouil, they did not include his name anywhere in the Agreement, and they never sought to collect payments from him. It is clear the Agreement was between Viacom and W.S. on Washington—not Viacom and Taouil. Accordingly, we grant Taouil's second point on appeal.

### Conclusion

The overwhelming weight of the evidence does not support a finding of a contract between Viacom and Taouil. We therefore reverse the trial court's ruling in favor of Viacom and enter judgment in favor of Taouil.

REVERSED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.