# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44357

SHAWN W. BAILEY,

    Plaintiff-Appellant,

v.

PERITUS I ASSETS MANAGEMENT, LLC,

    Defendant-Respondent,

and

AMERICAN MEDICAL FILE, INC., a California Corporation; RONALD J. HELLER, an individual; DAVID J. DESMOND, an individual; and WILLIAM R. ESPINOSA,

    Defendants.

Boise, June 2017 Term

2017 Opinion No. 89

Filed: July 12, 2017

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

District court judgment dismissing breach of contract claim, <u>vacated</u> and remanded.

Jeffrey J. Hepworth & Associates, Boise, for appellant. Jeffrey J. Hepworth argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondent. John Ashby argued.

---

BURDICK, Chief Justice.

    Shawn W. Bailey brings this appeal from the Ada County district court. In October 2014, Bailey sued several parties, including Peritus 1 Assets Management, LLC (Peritus), for claims allegedly arising out of his employment at American Medical File, Inc. (AMF), doing business as OnFile. Bailey alleged claims for breach of his employment contract and intentional infliction of emotional distress. Peritus moved to dismiss Bailey's claim for intentional infliction of

1

emotional distress, and the district court granted the motion on the basis that Bailey had not alleged conduct that was extreme and outrageous. Peritus thereafter moved for summary judgment on Bailey's breach of contract claim, contending the statute of frauds rendered it unenforceable. In response, Bailey moved to amend his complaint in an effort to bypass the statute of frauds. The district court denied Bailey leave to amend and granted Peritus summary judgment, finding the statute of frauds dispositive. Bailey timely appeals the denial of leave to amend and grant of summary judgment in favor of Peritus. We vacate the district court's judgment dismissing Bailey's breach of contract claim against Peritus and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

AMF was incorporated in California in 2001. AMF was a startup company that provided medical records management software to entities in the healthcare industry. Bailey was hired as AMF's Vice President of Product Development in April 2006 under an oral contract of employment entitling Bailey to an annual salary of $110,000 plus several fringe benefits. Bailey maintains that Peritus, an investment advisory company involved with AMF, recruited him to work at AMF and agreed it would be responsible for paying his compensation.

Peritus became involved with AMF in 2004, when some Peritus clients took an interest in investing in AMF. To that end, Peritus formed the Peritus Global Opportunity Fund, LLP (PGO Fund), a hedge fund, as a vehicle for interested clients to invest in AMF. Between September 2004 and November 2006, the PGO Fund invested approximately $6,450,000 in AMF. Moreover, the PGO Fund extended a bridge loan to AMF, which was secured by AMF's founders' shares of AMF stock. After AMF defaulted on the bridge loan in 2005, the PGO Fund foreclosed on the AMF shares securing its loan and became the owner of ninety percent of AMF's outstanding stock. The PGO Fund dissolved in 2008, at which time the AMF shares were distributed to the Peritus clients who formerly comprised the PGO Fund. Peritus then began loaning funds to AMF. As a condition of the loans, Peritus required AMF to allow Peritus's Chief Operating Officer, David J. Desmond, and its Founder and Managing Member, Ronald J. Heller, to be on AMF's Board of Directors so as to "monitor the operation of AMF."

In his pre-employment discussions, Bailey became aware of Peritus's ties to AMF. He became aware also that AMF was underfunded and generating only $2,500 per month in revenue. When Bailey recalled those discussions, he indicated that Peritus representatives made several promises that Peritus would pay Bailey's compensation because AMF could not.

2

Nevertheless, Bailey did not receive all compensation to which he was entitled under his oral contract of employment. By August 2011, Bailey was allegedly owed $95,000 in back pay. When he threatened to resign, he was provided with a written contract of employment. The written contract recites that Bailey was entitled to an annual salary of $150,000 plus several fringe benefits. The written contract says nothing of back pay, but Bailey maintains that Peritus made several promises to pay his back pay in full.

Even with the written contract, Bailey still did not receive all compensation to which he was entitled. He resigned from AMF in March 2013 and sued in October 2014, alleging claims for breach of employment contract and intentional infliction of emotional distress. As defendants, Bailey named AMF, Peritus, and three individuals associated with AMF and Peritus.[1] All defendants moved to dismiss. In March 2015, the district court dismissed both claims against the defendants who Bailey had named individually and also dismissed the emotional distress claim against all defendants, leaving only the breach of contract claim against AMF and Peritus. In May 2015, AMF filed for bankruptcy, and Bailey's contract claim against AMF was stayed. Peritus moved for summary judgment, contending the statute of frauds barred Bailey's breach of contract claim. Bailey responded by requesting leave to amend his complaint in an effort to bypass the statute of frauds. The district court denied Bailey's motion to amend and granted Peritus's motion for summary judgment. Bailey timely appeals the denial of leave to amend and grant of summary judgment in favor of Peritus.

## II.  ISSUES ON APPEAL

1. Did the district court err by granting summary judgment to Peritus on Bailey's claim for breach of employment contract?

2. Did the district court err by denying Bailey leave to amend his complaint?

3. Is the prevailing party entitled to attorney fees on appeal?

## III.  ANALYSIS

### A.  The district court erred by granting summary judgment to Peritus on Bailey's claim for breach of employment contract.

This Court reviews a summary judgment order under the same standard the district court used in ruling on the motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). That is, summary

---

[1] These three individuals are: (1) Ronald J. Heller, "owner and founder of Peritus as well as its managing member," "President of Peritus," and "Board Member of AMF"; (2) David J. Desmond, "Chief Operating Officer of Peritus and . . . member of the Board of Directors of AMF"; (3) William R. Espinosa, Chairman and Chief Executive Officer of AMF.

3

judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).[2] We construe disputed facts in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Major v. Sec. Equip. Corp.*, 155 Idaho 199, 202, 307 P.3d 1225, 1228 (2013).

*Mitchell v. State*, 160 Idaho 81, 84, 369 P.3d 299, 302 (2016).

The district court found that the statute of frauds, Idaho Code section 9-505(2), barred Bailey's breach of contract claim against Peritus and granted summary judgment to Peritus. As the district court reasoned, Bailey's argument was merely that Peritus had allegedly made an oral promise that was collateral to AMF's original promise to pay Bailey's compensation if AMF failed to do so. And because Peritus's alleged collateral promise was never memorialized in a sufficient writing, the district court held that section 9-505(2) rendered Bailey's breach of contract claim against Peritus unenforceable. The district court erred in so concluding.

The statute of frauds is an affirmative defense that carves out an exception to the general rule that oral contracts are enforceable, enumerating five primary categories of contracts that are deemed unenforceable if not reduced to a sufficient writing. *See* I.C. § 9-505. Employment contracts for an indefinite term, like Bailey's, generally do not trigger the statute of frauds. *Cf. Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 412, 179 P.3d 1064, 1068 (2008). However, in this case, the specific statute of frauds provision the district court found to be dispositive provides that "[a] special promise to answer for the debt, default or miscarriage of another" must be reduced to a sufficient writing to be enforceable. I.C. § 9-505(2). That provision renders a collateral promise to assume the original obligation of another unenforceable if not memorialized in a sufficient writing. *See id.*; *see also* 9 Williston on Contracts § 22:6 (4th ed. 2017).

Section 9-505(2) does not apply here. The allegations in this case are not that a collateral promise was made to assume the debt of another, but instead that multiple debtors are jointly liable for an original obligation as principals. Bailey's complaint is replete with allegations that Peritus and AMF assumed joint liability for his compensation as original obligors, allegations which do not trigger the statute of frauds. For example, as Bailey alleged in his complaint, when

---

[2] The district court granted summary judgment in June 2016. Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

he threatened to resign in August 2011, the "Defendants[3] again promised and agreed to provide a written employment contract and promised to pay back wages in full." He further alleged that, after threatening to resign, "Bailey and the Defendants entered into a written employment agreement wherein the Defendants agreed to pay Bailey a base salary of $150,000.00 per year, an immediate vesting of 1,500,000 shares of [AMF] stock, and a severance package of two years annual salary upon termination." And even though the written contract does not address the back pay allegedly due Bailey, Bailey alleged that "the Defendants promised Bailey they would pay the amounts owed under the April 1, 2006 contract at a future date when AMF became profitable or Bailey was terminated."

The record lends support to Bailey's allegations. Bailey testified to pre-employment discussions with Peritus representatives in his deposition. In those pre-employment discussions, Peritus representatives "said they would pay [Bailey]" because AMF was underfunded. Bailey testified additionally that Peritus representatives enticed him to work for AMF, assuring him that Peritus "could raise another $50 million in assets to recapitalize and to put American Medical File back together" when seeking to recruit Bailey. However, because he knew AMF was underfunded, Bailey testified that one "stipulation" of coming aboard AMF was "[t]hat Peritus be responsible for paying [him]." From those discussions emerged a written offer of employment provided to Bailey in 2006. The 2006 offer states that it "serve[s] as a letter of intent toward [Bailey's] potential employment with American Medical File, Inc. (OnFile)." Yet, the offer's only signature blocks are for Heller and Desmond and refers to them as Peritus representatives. At that time, neither Heller nor Desmond were AMF representatives. The 2006 offer contains no signature block for any AMF representative. While the 2006 offer is unsigned, Bailey testified that he did receive a signed copy of it. Similarly, Desmond and Heller both signed Bailey's 2011 written contract in their Peritus and AMF capacities.

Peritus counters with *Viacom Outdoor, Inc. v. Taouil*, 254 S.W.3d 234 (Mo. Ct. App. 2008), arguing the 2006 offer's signature blocks and the 2011 offer's signatures are irrelevant. In *Taouil*, two businesses, Viacom Outdoor, Inc. (Viacom) and Fourth and Washington, LLC, doing business as W.S. on Washington (Washington), entered into a contract for billboard advertising on Washington's commercial building. *Id.* at 236. Under the contract, Viacom "agreed to provide

---

[3] Because Bailey named Peritus as a defendant in his initial complaint, Peritus is included in Bailey's reference to the "Defendants."

three months of outdoor billboard advertising services for . . . Washington, and . . . Washington agreed to pay Viacom $12,000 for said advertising services." *Id.* Representatives of both Viacom and Washington signed the contract. *Id.* Additionally, Max Taouil, who managed a restaurant inside Washington's commercial building, signed the contract "believ[ing] he was simply giving permission for his artwork and logo to be placed on the billboard." *Id.* When payment for the advertising services was never made, Viacom sued Taouil for payment of those services. *Id.* Taouil, however, never participated in the negotiations between Viacom and Washington for advertising services. *Id.* at 238. Nor did Taouil have any part in drafting the contract. *Id.* Indeed, the record "reveal[ed] not even a modicum of evidence showing a meeting of minds between Viacom and Taouil," and as such, Taouil's signature was "not dispositive of his intent to be bound" for payment of the advertising services. *Id.* at 238.

*Taouil* is inapposite because here the record does contain evidence raising a triable issue of fact as to whether Peritus intended to bind itself for payment of Bailey's compensation. Unlike in *Taouil*, Bailey alleged and testified that Peritus held a key role in negotiating the terms of his employment. Not only did Bailey testify to the pre-employment discussions with Peritus representatives explored above, but he testified also that Peritus representatives kept him working at AMF when he threatened to resign over missed compensation, as he would not have continued working at AMF absent the 2011 "contract signed by the Peritus officers and the numerous verbal assurances" that Peritus would pay his compensation. Additionally, unlike in *Taouil*, where the third-party had no part in drafting the contract, here Bailey testified that Peritus representatives drafted both the 2006 offer and the 2011 contract. And comparing those documents to the contract of employment executed between AMF and its Operating Officer, R.J. Dundas, we note that no signature block or signature of any Peritus representative is found on Dundas's contract. The only two signatures on Dundas's contract are Dundas's and Joel Rayden's, AMF's Chief Executive Officer. Resolving doubts and inferences in Bailey's favor at this juncture, we task the finder of fact with deciding whether Bailey had an enforceable contract with Peritus. *Cf. Mackay*, 145 Idaho at 413, 179 P.3d at 1069 ("When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists.").

Accordingly, the district court erred by finding the statute of frauds barred Bailey's breach of contract claim against Peritus. Because section 9-505(2) is triggered by an assumption

of another's debt, default, or miscarriage, section 9-505(2) does not apply to this case. As explained, Bailey's allegations are that Peritus is jointly liable for his compensation as a principal debtor, not that it made a collateral promise to "answer for the debt, default or miscarriage of another" under section 9-505(2). Granted, Bailey's complaint did contain an allegation that, in 2007, Peritus promised it "would guarantee payment of Bailey's salary and other compensation." In placing undue weight on that lone allegation, Peritus forgets that Bailey is not "slavishly bound" to any particular theory alleged in his complaint. *See, e.g.*, *Cook v. Skyline Corp.*, 135 Idaho 26, 33–34, 13 P.3d 857, 864–65 (2000). Moreover, that lone allegation does not vitiate the thrust of Bailey's complaint to somehow change this case from one alleging principal liability to one alleging collateral liability. When viewed in the context of Bailey's complaint and the record, that lone allegation reasonably suggests Bailey used "guarantee" to mean that Peritus and AMF made original promises to pay his compensation. Bailey, the nonmovant, was entitled to have this inference decided in his favor at summary judgment. *Kugler v. Nelson*, 160 Idaho 408, 412, 374 P.3d 571, 575 (2016) (explaining that, at summary judgment, the court "draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion" (quoting *Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009))).

We vacate the district court's judgment granting summary judgment to Peritus on Bailey's breach of contract claim and remand this case for further proceedings consistent with this opinion. Because the statute of frauds is inapplicable, we do not reach the parties' arguments concerning whether a statute of frauds exception applies.

**B.      We decline to address whether the district court erred by denying Bailey leave to amend his complaint.**

Bailey's arguments concerning whether the district court erred by denying him leave to amend his complaint all center on his position that leave should have been granted to allow him to allege that a statute of frauds exception applied. However, our conclusion that the statute of frauds does not apply to Bailey's claim for breach of contract against Peritus as alleged in his initial complaint moots any need for Bailey to allege statute of frauds exceptions. Hence, we need not reach this issue. *See, e.g.*, *Mitchell*, 160 Idaho at 89, 369 P.3d at 307 (explaining that this Court "will not hear and resolve" moot issues); *see also* I.R.C.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

7

**C.      We decline to award attorney fees on appeal.**

Bailey and Peritus both seek attorney fees on appeal under Idaho Code section 12-120(3), which entitles the prevailing party to attorney fees "[i]n any civil action to recover on . . . [a] contract . . . and in any commercial transaction . . . ." Section 12-120(3) applies if a "commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Union Bank, N.A. v. JV LLC*, No. 42479, 2017 WL 383434, at *10 (Idaho Jan. 27, 2017) (quoting *Blimka v. My Web Wholesaler*, LLC, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007)). "Actions brought for breach of an employment contract are considered commercial transactions and are subject to the attorney fee provision of I.C. § 12-120(3)." *Mackay*, 151 Idaho at 399, 257 P.3d at 766 (quoting *Willie v. Bd. of Trs.*, 138 Idaho 131, 136, 59 P.3d 302, 307 (2002)).

However, an award of attorney fees is improper at this juncture. It is presently unclear who the prevailing party will be. Bailey's breach of contract claim must be resolved before the identity of the prevailing party can be determined. When a final judgment is entered, we direct the district court to determine which party has prevailed and whether the prevailing party is entitled to attorney fees related to this appeal. *E.g.*, *Wolford v. Montee*, 161 Idaho 432, ___, 387 P.3d 100, 111–12 (2016); *Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 269, 297 P.3d 222, 232 (2012).

## IV.      CONCLUSION

We vacate the district court's judgment granting summary judgment to Peritus on Bailey's breach of contract claim and remand this case for proceedings consistent with this opinion. We do not award attorney fees or costs at this time on appeal.

Justices EISMANN, JONES, HORTON and KIDWELL, J., PRO TEM, **CONCUR.**