**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Lee Roy NEITZEL and Lynne M. Neitzel, husband and wife; Margaret Neitzel; Heller Financial, Inc.; and John Deere Company, Defendants.**

Civ. A. No. 89–1045–T.

United States District Court, D. Kansas.

July 12, 1991.

Jack C. Marvin, Wichita, Kan., for plaintiff.

Philip L. Bowman, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's motion for summary judgment against defendant Margaret Neitzel. The action is for recovery on a note acquired by plaintiff from the Citizens State Bank in St. Francis, Kansas upon its closure on May 15, 1989.

The dispute concerns a document titled "LOAN GUARANTY AGREEMENT" executed by defendant Margaret Neitzel on February 22, 1985. The agreement is a printed form that allegedly guarantees several notes signed by Lee Roy Neitzel and his wife Lynne.[1] The first paragraph of the agreement reads:

> In consideration of Citizens State Bank, St. Francis, Kans. herein called ("Bank"), lending and-or making any other financial accommodations heretofore, now, or hereafter, to

> *Lee Roy Neitzel and Lynne M. Neitzel,* hereinafter referred to as "DEBTOR," meaning all obligations to be joint and several, we, the undersigned, hereinafter referred to as "GUARANTOR," meaning all obligations to be joint and several, and each of us unconditionally guarantee payment of all obligations to BANK and performance of all obligations to BANK including expenses of collection incurred by BANK in enforcing the obligations of DEBTOR. This guaranty is limited to a [sic]

> amount of _____ ($_____),
> (If blank this guaranty assumes payment of all obligations of DEBTOR)

> plus interest on such amount and expenses of enforcing this guaranty. This guaranty shall run to all debts and obligations of DEBTOR made heretofore,

---

1. In response to the present motion, defendants Lee Roy and Lynne Neitzel did not dispute their liability under the notes. Accordingly, the court entered judgment against Lee Roy and Lynne Neitzel by journal entry. Doc. 74. Subsequently, plaintiff released these defendants from the judgment obtained against them. Doc. 76.

concurrently or hereafter to the extent of the liability indicated. The guaranty shall be full, complete and shall obligate the undersigned as fully as if the undersigned had executed every document to BANK that DEBTOR had executed, except that guarantors total liability is limited as stated above.

The signature of Margaret Neitzel appears at the bottom of the agreement on a line under which the word "GUARANTOR" is printed. On the reverse [2] side of the agreement, the following printed language is found under the heading "EXPLANATION OF CONSIGNOR'S OR GUARANTOR'S OBLIGATION":

You, _____, by consigning or guarantying the indebtedness of _____ (the "principal debtor(s)") are agreeing the you will pay $_____ together with

__ interest __ late charges __ attorney's fees for collection.

Unless you received the benefit of the proceeds of the credit transaction, your obligation arises only after the creditor has attempted to collect this amount from the principal debtor(s). If the creditor cannot collect this amount from the principal debtor(s), you will be obligated to pay even though you did not receive any benefit from the credit transaction. The creditor is entitled to sue you in court for the payment of the amount due.

The undersigned acknowledge receipt of a fully completed copy of the foregoing Explanation of Consignor's or Guarantor's Obligation before entering into such obligation.

The document is signed by Margaret Neitzel and is dated February 22, 1985. The only terms that have been typed onto the form are the names of "Lee Roy Neitzel and Lynne M. Neitzel," identified as the debtors, and the date of February 22, 1985, which appears on both the front and back of the agreement.

Defendant contends that the guaranty agreement is invalid under Kansas law [3] because it is ambiguous on its face and contains material omissions. This court's interpretation of the guaranty is guided by well established principles of construction.

A contract of guaranty is to be construed, as are other contracts, according to the intention of the parties as determined by a reasonable interpretation of the language used in the light of the attendant circumstances. After the intention of the parties or the scope of the guarantor's undertaking has been determined by application of general rules of construction, the obligation is strictly construed and may not be extended by construction or implication.

*Overland Park Savings & Loan Ass'n v. Miller,* 243 Kan. 730, 738, 763 P.2d 1092 (1988).

Defendant relies on the Kansas Supreme Court's decision *Kutilek v. Union Nat'l Bank of Wichita,* 213 Kan. 407, 516 P.2d 979 (1973), which addressed the sufficiency of a guaranty agreement under the statute of frauds. The guaranty agreement at issue in *Kutilek* was also on a printed form that contained certain unfilled blank spaces. Specifically, the parties had failed to specify the amount of the requested loan and the total amount of liability the guarantor was assuming. The court held that the total amount of liability assumed by the guarantor was a material term and therefore, that its omission was fatal to its

---

**2.** Copies of the guaranty agreement are attached as exhibits to the parties' memoranda. The two pages of this agreement are copied on two separate sheets of paper. The court gleans from the briefs, however, that the original agreement consists of a single sheet of paper on which the agreement is printed on both the front and back.

**3.** It appears settled that federal law normally governs civil suits in which the FDIC is a party. *See FDIC v. Bank of Boulder,* 911 F.2d 1466, 1474–77 (10th Cir.1990) (en banc); *Downriver*

*Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754, 760 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *Jones v. FDIC,* 748 F.2d 1400, 1402 (10th Cir.1984); *see also* 12 U.S.C. § 1819(b)(2)(A) (as amended by Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 209, 103 Stat. 183, 216). Nonetheless, the court may look to state law in fashioning federal common law. *Downriver,* 879 F.2d at 761.

enforceability. 213 Kan. at 411–12, 516 P.2d 979.

The critical distinction between the present agreement and that involved in *Kutilek* is that the amount of liability assumed by Margaret Neitzel is not a matter of speculation. Unlike *Kutilek*, the agreement states parenthetically the legal consequence of a blank space: if blank, all obligations of the debtor are guaranteed. Immediately following this blank is the language:

> This guaranty shall run to all debts and obligations of DEBTOR made heretofore, concurrently or hereafter to the extent of the liability indicated. The guaranty shall be full, complete and *shall obligate the undersigned as fully as if the undersigned had executed every document to BANK that DEBTOR had executed, except that guarantors total liability is limited as stated above.*

(emphasis added).

The court does not find the terms of this guaranty agreement to be ambiguous. "Language in a contract is 'ambiguous' only when the words used to express the meaning and intention of the parties are insufficient in that the contract may be understood to reach two or more possible meanings." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988). Defendant's argument implies a belief that a guaranty agreement printed on a standard form is not enforceable unless all blanks of the form contain terms. The statute of frauds, however, does not require that all terms of the agreement be stated precisely. *See Restatement (Second) of Contracts* § 131 & illustration 4 (1979). Although, as *Kutilek* held, the total amount of liability is a material term, material terms need only be stated with reasonable certainty. *Barnhart v. McKinney*, 235 Kan. 511, 524, 682 P.2d 112 (1984) (quoting *Clark v. Larkin*, 172 Kan. 284, 239 P.2d 970, ¶ 2 (1952)). The agreement states with reasonable certainty that unless specifically limited, the guarantor assumes liability for all obligations of the debtor. Thus, the court finds that the agreement complies with the statute of frauds.

■ Defendant also argues that inconsistencies in the agreement render it ambiguous and thus unenforceable under the statute of frauds. Defendant notes that the front page of the agreement contains the following language: "The BANK may sue or proceed against any or all guarantors without first proceeding against DEBTOR...." On the reverse side,[4] however, the agreement states: "Unless you received the benefit of the proceeds of the credit transaction, your obligation arises only after the creditor has attempted to collect this amount from the principal debtor(s). If the creditor cannot collect this amount from the principal debtor(s), you will be obligated to pay even though you did not receive any benefit from the credit transaction."

The court finds this aspect of the parties' rights and duties under the agreement to be ambiguous. Contrary to defendant's suggestion, however, this ambiguity does not render the agreement unenforceable. Rather, applying traditional rules of construction, the court will construe this ambiguity against its drafter. *See, e.g., Helitzer v. Helitzer*, 761 F.2d 582, 589 (10th Cir.1985); *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 585, 738 P.2d 866 (1987). Under the agreement, plaintiff is required to exhaust its rights against the debtors before proceeding against the guarantor.

■ Finally, defendant suggests that the agreement is unenforceable because she did not knowingly enter into the contract. Defendant does not allege that she suffered from any physical or mental inability

---

**4.** Plaintiff contends that the reverse side of the agreement does not constitute any part of the agreement, but is only an "explanation" of the guarantor's obligation. The court cannot agree. Acceptance of plaintiff's argument would allow a sophisticated drafter of agreements to use the simplified language of the "explanation" in or-

der to gain the assent of the opposing contracting party to the contrary terms of the "formal" agreement. The court will not allow plaintiff to ignore an unfavorable portion of an agreement printed on a single sheet of paper simply by designating this portion as an "explanation" of obligations.

to understand the agreement that she signed. Nor does defendant contend that the Bank used fraud or deception to obtain her signatures. Instead, her defense appears to be that she had not read the agreement and did not know of the extent of the indebtedness of the debtors.

This defense must fail. A guarantor may not be excused of an otherwise valid guaranty agreement simply by claiming that she did not read the agreement. *See First Nat'l Bank of Denver v. Caro Constr. Co.*, 211 Kan. 678, 508 P.2d 516, ¶ 4 (1973); *United States v. Country Kettle, Inc.*, 738 F.Supp. 1358, 1360–61 (D.Kan. 1990); *L.R. Foy Constr. Co. v. Dean Dauley & Waldorf Assocs.*, 547 F.Supp. 166, 168–69 (D.Kan.1982); *Squires v. Woodbury*, 5 Kan.App.2d 596, 598, 621 P.2d 443 (1980). Although defendant may have been subjectively mistaken as to her obligations or the extent of her obligations, this does not provide a valid defense to the agreement's enforceability.

The court finds that no issues of fact exist as to the enforceability of the guaranty agreement signed by defendant Margaret Neitzel. Plaintiff, however, must attempt to collect from the debtors before proceeding against the guarantor.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for summary judgment against defendant Margaret Neitzel (Doc. 58) be granted.