(111 P.3d 182)
No. 92,380

DAVID E. BOTKIN, *et al.*, *Appellees*, v. SECURITY STATE BANK, WELLINGTON, KANSAS, A KANSAS CORPORATION, *Appellant*.

Opinion filed May 13, 2005.

*Martin J. Peck*, of DeJarnett & Peck, L.L.P, of Wellington, for appellant.

*W. Thomas Gilman*, of Redmond & Nazar, L.L.P., of Wichita, for appellees.

Before GREENE, P.J., CAPLINGER and BUSER, JJ.

GREENE, J.: Security State Bank (Bank) appeals the district court's order granting summary judgment to 32 individuals who had executed guaranties in favor of the Bank in connection with a

loan to "Botkin LLC," arguing that the court erred in concluding that the statute of frauds barred enforcement of the instruments and in refusing to enforce an express waiver of the statute of frauds defense contained in the instrument. We reverse, concluding that the statute of frauds does not bar enforcement of the guaranty instruments.

*Factual and Procedural Background*

In order to induce the Bank to make loans to Botkin LLC, 32 individual members of that limited liability company executed detailed three-page guaranty instruments to the Bank in early March 2001. Material provisions in each of said instruments include the following:

"For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce the Security State Bank, Wellington, Kansas (herein, with its participants, successors and assigns, called 'Lender'), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of Botkin LLC (herein called 'Borrower') or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

. . . .

"B. If this [x] is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender . . . . Without limitation, this guaranty includes the following described debt(s): notes dated 3-9-01.

. . . .

"4. The liability of the Undersigned hereunder shall be limited to a principal amount of my proportional ownership share (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collections costs and enforcement expenses referable thereto. . . .

. . . .

"7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of . . . statute of frauds . . . which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender

to Borrower or any such other person, whether or not on account of a related transaction. . . .

. . . .

"13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned."

At some time after the instruments were executed and prior to any default, guarantors provided to the Bank a list of members and their proportional ownership interest in Botkin LLC as of December 7, 2001; the list was submitted on formal letterhead of Botkin LLC.

After Botkin LLC defaulted on its loan obligations to the Bank, guarantors filed a petition in district court seeking declaratory judgment, asserting that the instruments violated the statute of frauds, K.S.A. 33-106, and should be declared unenforceable. The Bank answered and counterclaimed for amounts due on the loan, $776,449.99, costs, and attorney fees, and set forth each guarantor's percentage of liability. The answer and counterclaim were later amended to include the Bank's claim that guarantors had waived the statute of frauds.

Guarantors advanced the litigation by filing a motion for summary judgment, arguing said agreements were not enforceable because the limitation of liability provision was ambiguous and the amounts each guarantor would have to pay could only be determined by inadmissible parol evidence, relying principally on *Kenby Oil Co. v. Lange*, 30 Kan. App. 2d 439, 42 P.3d 201 (2002).

The Bank's response to guarantors' motion for summary judgment conceded that "evidence other than the guaranties themselves will need to be introduced into evidence" and included the list itemizing each member's percentage ownership as of December 7, 2001, supported by an affidavit of the Bank's president averring that the list was provided "in connection with the guaranties." Guarantors objected to the Bank's "attempt to supplement the terms of the agreements by adding a list of members that was allegedly 'provided' to the Bank 'in connection with the guaran-

ties.' " Guarantors also noted that "[i]n [the Bank's] responses [to guarantors requests for admissions, the Bank] made no reference to any list of members that was allegedly 'provided' to the bank in connection with the guaranties made by the [guarantors]." The Bank then filed a motion for summary judgment based on the *least* percentage each guarantor *ever* owned in Botkin LLC.

The district court granted summary judgment for guarantors. The court's rationale relied largely on *Kenby Oil*, stating: "For a guaranty to be sufficient under the statute of frauds, it must be complete in itself, leaving nothing to rest in parol." The court prohibited any reliance on the ownership list by stating: "[T]here is no evidence proffered that the list even existed at the time of the execution of the agreements, let alone that the list was a part of the agreements." The Bank timely appeals.

*Standard of Review*

When there are no factual disputes and the issues are determined by applying the law to undisputed facts, the standard of review is de novo. *Miskew v. Hess*, 21 Kan. App. 2d 927, 910 P.2d 223 (1996). Moreover, issues resolved through the construction of written instruments are reviewed de novo. *Gore v. Beren*, 254 Kan. 418, 427, 867 P.2d 330 (1994).

*Did the District Court Err in Concluding that the Guaranty Instruments Were Unenforceable by Reason of the Statute of Frauds?*

The district court supported its conclusion and result with citations to K.S.A. 33-106 and *Kenby Oil*. The court's memorandum opinion states in material part:

"The guaranty agreements signed by the Plaintiffs are required to be in writing and complete in themselves by the statute of frauds and applicable case law. They are not. It is not possible from the terms of the agreements themselves to determine what amount of the debt of Botkin, LLC is being guaranteed by . . . the plaintiff signing the agreement. The interest of the individual Plaintiff is limited by the terms of the agreements and is not the entire obligation of Botkin, LLC. The percentage of ownership was not established at the time of the execution of the guaranty agreements. Without parol evidence it is not possible to determine if the ownership interest is that at the time of the signing of the agreement, at the

time an indebtedness is created, at the time of default or at the time a demand is made or judgment is sought."

The principal argument of guarantors and the chief concern of the district court was that there was no stated *amount* of maximum liability of each guarantor because the instrument stated only "my proportional ownership share" and the percentage of ownership share of each guarantor was not established at the time of execution. This argument overlooks the language in the parenthetical following the reference to "my proportional ownership share," which states: "[I]f no *amount* is stated, the Undersigned shall be liable for *all* Indebtedness, without any limitation as to amount." (Emphasis added.) Construing the entirety of the text of paragraph 4 of the instrument, it is clear that any failure in the specificity of "my proportional ownership share" does not leave the instrument without an essential term; in fact, because no "amount" was stated in the blank, the instrument clearly declares that there is *no* liability limitation and imposes on each guarantor an obligation for "all indebtedness" of the borrower. We note that this construction is consistent with paragraph 13 of the instrument, which imposes joint and several liability upon *each* guarantor, even if other guarantors fail to sign their proposed guaranty. The instruments did not lack an essential term; instead, they expressly contemplated as an alternative to the blank, that there be *no* liability limitation in the event of any failure to specify the *amount* of maximum liability of each guarantor. In this regard, we find instructive the rationale of a very similar federal case where the agreement stated parenthetically the legal consequence of a blank space. In finding no violation of the statute of frauds, the court stated:

"The statute of frauds, however, does not require that all terms of the agreement be stated *precisely*. [Citation omitted.] . . . The agreement states with reasonable certainty that unless specifically limited, the guarantor assumes liability for all obligations of the debtor. Thus, the court finds that the agreement complies with the statute of frauds." (Emphasis added.) *Federal Deposit Ins. Corp. v. Neitzel*, 769 F. Supp. 346, 349 (D. Kan. 1991).

Based upon our construction of the instruments, we believe that the guarantors' and district court's reliance on *Kenby Oil* is misplaced. The guaranty in *Kenby Oil* failed to identify the underlying

borrower whose debt was to be guaranteed; the instrument was executed with a blank preceding the phrase "Guarantor's Company," and the creditor later filled in the blank. This court held that the failure to provide the name of the principal debtor caused the instrument to lack "one of the essentials of a note or memorandum under the statute of frauds, and was void and unenforceable." 30 Kan. App. 2d at 443. The court stated that "[s]ophisticated vendors that leave blanks in guaranties do so at their peril," citing *Kutilek v. Union National Bank of Wichita*, 213 Kan. 407, 516 P.2d 979 (1973), and *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970). 30 Kan. App. 2d at 443. In both of these cases, however, blanks were not completed in guaranty instruments. In *Kutilek*, the instrument failed to specify the amount to be guaranteed, and in *Walton*, the instrument failed to state whose debt was to be guaranteed. Although guarantors here acknowledge this obvious distinction, they suggest that it is not only blank spaces that can create incomplete and unenforceable instruments, citing *Wing v. Mollett*, 115 Kan. 116, 118, 222 Pac. 88 (1924). We read *Wing*, however, consistent with *Kutilek* and *Walton* in that the instrument of conveyance in question, although without blanks, failed to specify numerous material terms, including full payment price, identification of grantor and grantee, and any of the details for payment of an undefined "balance." 115 Kan. at 118.

The rule of all these cases is the same: the writing must contain the essential elements or material parts of the contract in order to avoid unenforceability by reason of the statute of frauds.

" ' "A Memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, which states with reasonable certainty (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." ' [Citation omitted.]

. . . .

" ' "To be sufficient as a note or a memorandum under the statute of frauds, a writing must be complete in itself, leaving nothing to rest in parol. The entire

agreement must be expressed in the writing. The contract cannot rest partly in writing and partly in parol. The general rule that a contract which is not entirely in writing is to be treated as a parol or verbal contract is applicable in determining whether the contract is within the inhibition of the statute of frauds. The memorandum must contain all the essential elements or material parts of the contract." ' [Citation omitted.]" 30 Kan. App. 2d 442 (quoting *Walton*, 204 Kan. at 747-48).

Here, there were no blanks left in the instruments nor an absence of any of the essentials of a note or memorandum under the statute of frauds; the instrument clearly identified the borrower as Botkin LLC, the indebtedness was broadly defined as including the note of 3-9-01, the amount to be guaranteed was "each and every debt" of borrower, the liability of the guarantor was either limited to "my proportional ownership share" or was unlimited, and each guarantor properly and timely executed the instrument. We do not believe that these instruments failed to specify the "essentials" of such a legal obligation and therefore conclude that *Kenby Oil* does not control.

Moreover, our appellate courts have long held that the statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it. See, *e.g., Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1104-05, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). In making this determination, courts generally examine whether the words used, against the background of the circumstances which surrounded the use of those words, would cause the creditor reasonably to believe that the promisor had agreed to answer for a principal obligation on the part of another person. 38 Am. Jur. 2d, Guaranty § 5, p. 875. Here it is clear that the Bank required individual guaranties from the members of Botkin LLC as an "inducement" or consideration for a substantial loan to Botkin LLC. The facts that the Bank required 32 detailed instruments to be executed by each of the individual guarantors, and that each instrument contained no blanks and omitted no essential terms, support a conclusion that any escape of these guarantors from liability would not be consistent with the underlying purpose of the statute. It is simply beyond dispute that the intent of the parties was that the Bank would fund loans to Botkin LLC upon

condition that the members provide individual guaranties of the obligation in the event of default. We cannot countenance the use of the statute of frauds to excuse guarantor liability under these circumstances, notwithstanding the fact that guarantors are favorites of the law. See *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 23 Kan. App. 2d 30, 36, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997).

Having concluded that the instruments do not violate the statute of frauds, the district court's grant of summary judgment to guarantors must be reversed. We recognize that our construction of the guaranty instruments has "turned on its head" the principal argument of the guarantors. Instead of the purported ambiguity of the phrase "my proportional ownership share" supporting an argument for unenforceability, the failure to specify an amount of such limitation may result in guarantors' loss of *any* limitation on individual liability. Accordingly, our construction requires remand for further proceedings to determine the intention of the parties at the time of execution. See *Baxter State Bank v. Bernhardt*, 985 F. Supp. 1259, 1268 (D. Kan. 1997); *Iola State Bank v. Biggs*, 233 Kan. 450, Syl. ¶ 2, 662 P.2d 563 (1983); *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan. App. 2d 246, 252, 640 P.2d 343 (1982).

The district court must entertain proceedings to resolve any ambiguity in the phrase "my proportional ownership share" at the time of execution. Resort to parol evidence under these circumstances, to address ambiguity of a term in the written instrument, is permissible and sometimes necessary so long as said parol evidence does not vary or contradict the terms of the writing. See *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992); *Gray v. Manhattan Med. Center, Inc.*, 28 Kan. App. 2d 572, 580, 18 P.3d 291 (2001); Annot., 33 A.L.R.2d 967. In the event that the parties fail to satisfy the district court regarding an enforceable intent of the parties regarding the phrase "my proportional ownership share" at the time of execution, the guaranties must be enforced without limitation against each guarantor.

The Bank also appealed the district court's refusal to enforce the guarantors' waiver of the defense of the statute of frauds, but this

issue is moot given our conclusion that the statute of frauds does not bar enforcement of the guaranty instruments.

Reversed and remanded for further proceedings not inconsistent with this opinion.