No. 92,380

DAVID E. BOTKIN, *et al.*, *Appellees*, v. SECURITY STATE BANK,
WELLINGTON, KANSAS, A KANSAS CORPORATION, *Appellant*.

(130 P.3d 92)

Opinion filed March 17, 2006.

*Martin J. Peck,* of Hyndman & Peck, L.L.P., of Wellington, argued the cause and was on the briefs for appellant.

*W. Thomas Gilman,* of Redmond & Nazar, L.L.P., of Wichita, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

NUSS, J.: This case requires us to determine whether certain written guaranties are enforceable. After Security State Bank's borrower, Botkin, LLC, defaulted on its loan obligations, David Botkin and 33 others filed a declaratory judgment action to determine whether their signed guaranty agreements were enforceable under the statute of frauds, K.S.A. 33-106. The Bank filed a counterclaim seeking to enforce the guaranties. The district court granted the guarantors' motion for summary judgment, and the Court of Appeals reversed and remanded in *Botkin v. Security State Bank,* 33 Kan. App. 2d 914, 111 P.3d 182 (2005). We granted the guarantors' petition for review and jurisdiction exists under K.S.A. 60-2101(b).

The issues on appeal, and this court's accompanying holdings, are as follows:

1.  Do the written guaranties contain the essential terms of a contract so that they are enforceable under the statute of frauds, K.S.A. 33-106? Yes.
2.  Did the guarantors waive the statute of frauds defense? Moot.
3.  Is the guaranty waiver provision contrary to public policy? Moot.

The Court of Appeals is affirmed in part and reversed in part; the district court is reversed, and the case is remanded for further proceedings.

## FACTS

The principal facts, largely as recited by the Court of Appeals, are not in dispute. In March 2001, Security State Bank (Bank) loaned money to Botkin, LLC. In return, 34 individuals and entities executed separate three-page guaranty agreements securing the loan. With the exception of the guarantors' names and dates signed, the guaranties were identical and stated in relevant part:

"For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce the Security State Bank, Wellington, Kansas (herein, with its participants, successors and assigns, called 'Lender'), at its option,

at any time or from time to time to make loans or extend other accommodations to or for the account of Botkin LLC (herein called 'Borrower') or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

. . . .

"B. If this [x] is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender. . . . Without limitation, this guaranty includes the following described debt(s): notes dated 3-9-01.

"The term 'indebtedness' as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and Income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

. . . .

"4. The liability of the Undersigned hereunder shall be limited to a principal amount of <u>my proportional ownership share</u> (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. . . .

"5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

. . . .

This guaranty is . . . [x] secured by a mortgage and security agreement dated 3-9-01.

. . . .

"7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of . . . statute of frauds . . . which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction."

Sometime after the guaranties were executed, the Bank received a document printed on the formal letterhead of Botkin, LLC cap-

tioned "Member totals as of December 7, 2001." Among other things, the document provided the names of members and the amounts of each member's (1) "original investment," (2) "stock purchased," (3) "total investment," and (4) "percent ownership."

After Botkin, LLC defaulted on its loan obligations to the Bank, the 34 guarantors filed a preemptive petition in the district court seeking declaratory judgment because they were "at risk of being called upon to pay on their respective guaranty agreements." They argued that the guaranties violated the statute of frauds, K.S.A. 33-106, and were therefore unenforceable.

The Bank answered and counterclaimed for the amount due on the loan, $776,449.99, and costs including attorney fees. Its answer also included each guarantor's alleged percentage of liability. The answer/counterclaim was later amended to include the assertion that guarantors waived the statute of frauds defense.

Guarantors denied all percentages of liability attributed by the Bank's answer. On March 31, 2003, they filed a motion for summary judgment, arguing that the guaranties were not enforceable because the amount each guarantor would be liable for could only be determined by inadmissible parol evidence in violation of the statute of frauds.

In the Bank's response to guarantors' motion for summary judgment, it conceded that "evidence other than the guaranties themselves will need to be introduced into evidence." The Bank attached as evidence the document captioned "Member Totals as of December 7, 2001," and argued that the itemized list was nonparol evidence. It also attached an affidavit from its president, stating that the list was provided "in connection with the guaranties."

In the guarantors' reply, they objected to the Bank's "attempt to supplement the terms of the agreements by adding a list of members that was allegedly 'provided' to the Bank 'in connection with the guaranties' made by the [Guarantors]." They also noted that "[i]n [Bank's] responses [to guarantors' requests for admissions], the Bank made no reference to any list of members that was allegedly 'provided' to the Bank 'in connection with the guaranties made by the [guarantors].' "

The Bank supplemented its response to the guarantors' motion for summary judgment with lists documenting changes to guarantors' ownership interests in Botkin, LLC over time. It argued that even if each guarantor's percentage of liability changed during the time of the relationship between Botkin, LLC and the Bank, thus making the instruments ambiguous, the guarantors should at least be liable for the smallest amounts because the language "my proportional ownership share" in paragraph 4 would have given them notice of their exposure to liability. The Bank filed its own motion for summary judgment based upon the least percentage each guarantor ever owned in Botkin, LLC.

In April 2004, the district court granted summary judgment for the guarantors. It primarily held that under the statute of frauds, the guaranties were required to "be complete in [themselves], leaving nothing to rest in parol." It concluded they were incomplete and unenforceable. The court also denied reliance on the December 7, 2001, ownership list, stating "there is no evidence proffered that the list even existed at the time of the execution of the agreements, let alone that the list was part of the agreements."

The Court of Appeals reversed, finding the guaranties satisfied the statute of frauds and that any escape of the guarantors from liability would not be consistent with the underlying purpose of the statute, *i.e.*, to prevent fraud and injustice. It also remanded for determination of the parties' intent and of the meaning of the phrase "my proportional ownership share" in paragraph 4 of the guaranties. The court concluded that if "the parties fail to satisfy the district court regarding an enforceable intent of the parties regarding the phrase 'my proportional ownership share' at the time of execution, the guaranties must be enforced without limitation against each guarantor." It also held that the guarantors' possible waiver of the defense of the statute of frauds was moot. *Botkin v. Security State Bank*, 33 Kan. App. 2d 914, 921-22, 111 P.3d 182 (2005).

## ANALYSIS

Issue: *Do the written guaranties contain the essential elements of*

*a contract so that they are enforceable under the statute of frauds, K.S.A. 33-106?*

*Standard of Review*

The facts are undisputed, and our decision requires us to interpret and give legal effect to the written guaranties. Our standard of review of the district court's grant of summary judgment is therefore de novo. See *Bomhoff v. Nelnet Loan Services, Inc.,* 279 Kan. 415, 419-20, 109 P.3d 1241 (2005). Additionally, the rules governing the interpretation and construction of contracts generally apply to the interpretation or construction of a contract of guaranty. 38 Am. Jur. 2d, Guaranty § 65.

*Discussion*

The Kansas statute of frauds, K.S.A. 33-106, provides in pertinent part:

"No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Because the guaranties in the instant case are "promises to answer for the debt, default or miscarriage of another" they are subject to the statute of frauds. See *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316 (1970).

The first step in our analysis is to determine if an agreement exists, *i.e.,* if the written guaranty contains all of the essential terms of a contract. The guarantors argue it does not and it is therefore unenforceable under the statute of frauds. They cite, *inter alia, Kutilek v. Union National Bank of Wichita,* 213 Kan. 407, 516 P.2d 979 (1973), and *Kenby Oil v. Lange,* 30 Kan. App. 2d 439, 42 P.3d 201 (2002). Specifically, they assert essential terms are missing because (1) the phrase "my proportional ownership share" cannot be calculated without resorting to additional evidence not set out in the guaranty, (2) the phrase does not state the business or property to which it refers, and (3) the time at which the share would be calculated is not stated.

The Bank responds that the guaranty does contain all of the essential terms of a contract. It asserts that only reasonable certainty of the terms is required and that extrinsic evidence is admissible merely to help clarify the essential, albeit ambiguous, terms, *e.g.*, "my proportional ownership share." It cites, *inter alia, Kansas State Bank & Trust Co. v. DeLorean,* 7 Kan. App. 2d 246, 640 P.2d 343, *rev. denied* 231 Kan. 800 (1982), and *Federal Deposit Insurance Corp. v. Neitzel,* 769 F. Supp. 346 (D. Kan. 1991).

*Clark v. Larkin,* 172 Kan. 284, 239 P.2d 970 (1952), addresses these distinctions between the guarantors' and the Bank's arguments. There, the court reviewed the sale of real property which, like a guaranty, is also subject to the statute of frauds:

"[1] A writing relied upon to constitute the memorandum *must in and of itself furnish the evidence that the minds of the parties met as to the particular property* which the one proposed to sell and the other agreed to buy; when such *evidence* is not found in the writing, it cannot be supplied by parol, [2] *but if it is found there* [in the writing], parol evidence of extrinsic circumstances may be resorted to for the purpose of specifically designating the property to which both parties are shown to have referred by the terms of the writing." (Emphasis added.) 172 Kan. at 289 (citing 49 Am. Jur., Statute of Frauds § 349).

Stated another way, " '[t]he memorandum cannot rest partly in writing and partly in parol; that is to say, a deficiency in the memorandum cannot be supplied by parol evidence. But parol evidence is admissible to explain ambiguities, and to apply the instrument to the subject matter.' [Citation omitted.]" 172 Kan. at 287.

Similarly, as the court stated in *Sweeney v. Jacobsen,* 103 F. Supp. 393, 395 (D.D.C. 1952), "[w]hile necessary elements of a writing required by the statute of frauds may not be supplied by parol [citation omitted], ambiguities in the terms may be resolved by other evidence, *Barry v. Coombe,* 1 Pet. 640, 26 U.S. 640, 7 L. Ed. 295 [1828]." See *Wemhoff v. Investors Management Corp. of America,* 528 A.2d 1205, 1207 (D.C. C.A. 1987) ("[T]he statute of frauds does not require an exhaustive, integrated statement of the agreement in writing, but only a sufficient statement to establish that there in fact was an agreement and that the party charged should be bound by it."); *Cf., Holley v. Allen Drilling Co.,* 241 Kan. 707, 710, 740 P.2d 1077 (1987) ("The fact that the exact meaning

of language used can be ascertained only by consideration of extrinsic evidence does not render the written agreement unenforceable for indefiniteness or uncertainty.").

The Bank correctly argues that the statute of frauds only requires that material terms be stated with reasonable certainty. See Restatement (Second) of Contracts § 131(c) (1979). Similarly, in *Clark*, 172 Kan. 284, the court observed at Syl. ¶ 2:

"A memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, *which states with reasonable certainty* (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contact relates, and (c) *the terms and conditions of all the promises constituting the contract* and by whom and to whom the promises are made." (Emphasis added.)

See *Neitzel*, 769 F. Supp. at 349 (citing *Barnhart v. McKinney*, 235 Kan. 511, 524, 682 P.2d 112 [1984]) (material terms need only be stated with reasonable certainty).

In light of these authorities, we agree with the Court of Appeals that each guaranty is a contract whose essential terms are stated with reasonable certainty. We observe that the guarantors signed and dated a document that identified the signer, *e.g.*, David Botkin, and the signer's purpose—to guarantee the payment and performance of the debt of a principal. The document identifies the principal, Botkin, LLC, and expressly states why the signer was guaranteeing the loan: "to induce the [Bank] . . . to make loans or extend other accommodations to or for the account of Botkin, LLC." The debt to be guaranteed is "each and every debt" of Botkin, LLC, and the document specifies the indebtedness: "notes dated 3-9-01." The document also describes the guaranty's related security: "secured by a mortgage and security agreement dated 3-9-01." The document also provides that the guaranty will not include any obligations of Botkin, LLC to the Bank entered into after the date of the guarantor's signature unless a new guaranty is signed. See *Clark*, 172 Kan. at 287-88 (similarly listing the contract's essential terms supporting court's conclusion that it was enforceable under statute of frauds).

As the Court of Appeals suggests, paragraph 4 particularly expresses the parties' meeting of the minds regarding liability under the guaranties. It states in relevant part: "4. The liability of the Undersigned hereunder shall be limited to a principal amount of <u>my proportional ownership share</u> (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount)." While the court concluded that the amount of liability was expressed in alternatives, we agree that the document is clear that the guarantors intend to provide, and the Bank intends to accept, a certain guaranty of Botkin, LLC indebtedness. Consequently, this essential term is not lacking.

*Clark,* 172 Kan. 284, supports our conclusion. There, a property buyer argued that the location and identity of the property were not given with reasonable certainty, *i.e.,* without reference to the city, county, or state, and therefore the memorandum (his check) was not in sufficient compliance with the statute of frauds. His check simply disclosed that he was buying certain real estate described as "405 East 'A' " for the sum of $17,000. This court rejected his argument, in effect holding the essential elements were present, *i.e.,* "the description of the property as '405 East A' is sufficient to satisfy the statute [of frauds.]" 172 Kan. at 289. As explained later in this opinion, the court then more fully identified the particular property through extrinsic evidence. See also *Axelrod v. Pierron,* 222 Mo. App. 201, 297 S.W. 151 (1927) (in analogizing to real property case, court held guaranty not void for indefiniteness under statute of frauds, and extrinsic evidence admissible to explain its ambiguity).

Similarly, in *Barry v. Coombe,* 26 U.S. 640, 7 L. Ed. 295 (1828), the defendant argued that the memorandum to sell real estate was unenforceable because it did not meet the Maryland Statute of Frauds, *i.e.,* it did not contain essential terms. The memorandum stated: "By my purchase of your ½ E. B. wharf and premises this day as agreed on between us, $7578.63." The United States Supreme Court held that "[b]rief as it is, this memorandum contains a condensed summary of all the essentials to a complete contract." 26 U.S. at 651. As explained later in this opinion, it then used

extrinsic evidence to more fully identify the ambiguous "E.B. Wharf" to be sold.

By contrast, the main cases cited by the guarantors are easily distinguishable from the instant one. In *Wing v. Mollett,* 115 Kan. 116, 222 Pac. 88 (1924), the contract was missing many essential elements. These included, among other things, failure to: (1) include the full purchase price, (2) identify which party was grantor and which was the grantee, and (3) specify by whom the "note of $500 held by Charley Wing" was to be assumed or to indicate when or where the note was payable.

In *Kenby Oil Co. v. Lange,* 30 Kan. App. 2d at 440, the name of the principal debtor in a guaranty was left blank, and what followed stated "hereinafter called 'Guarantor's Company.'" The *Kenby* court cited *Kutilek v. Union National Bank of Wichita,* 213 Kan. 407 (two blanks—loan amount and limit of guarantor's liability), and *Walton v. Piqua State Bank,* 204 Kan. 741 (numerous blanks, including amount of debt guaranteed, other party to contract, and whose debt was guaranteed; and failed in any way to reference principal obligation, terms and conditions of repayment, consideration, or date of contract). The *Kenby* court then held that an essential term was missing and the guaranty was unenforceable. In the instant case, there are no blanks.

Like the Court of Appeals, we not only conclude that the essential terms are present, *i.e.,* an agreement exists, but also that to hold otherwise would be inconsistent with the purpose of the statute of frauds—to prevent fraud and injustice and not to foster or encourage it. See *Clark,* 172 Kan. at 289. We also agree with the Court of Appeals that paragraph 4's phrase "my proportional ownership share" is ambiguous and that the case must be remanded. See *DeLorean,* 7 Kan. App. 2d 246, Syl. ¶ 1 (whether a written guaranty is ambiguous is a question of law to be decided by the court). Accordingly, after an appropriate discovery period the district court must, among other things, determine through extrinsic evidence what is meant by that phrase.

*Clark,* 172 Kan. 284, and *Coombe,* 26 U.S. 640, illustrate this interplay between the initial determination of whether essential terms exist to constitute a contract, and if so, the later use of ex-

trinsic evidence to clarify an ambiguous, yet essential, contract term.

In *Clark,* after rejecting defendant's argument that the property description "405 East A" was too indefinite to satisfy the statute of frauds, the court then more fully identified the particular property through extrinsic evidence. The court observed that, among other things, the only real estate owned by the sellers with an address of 405 East A was in Hutchinson, Kansas; that it was the only tract with that description placed for sale with the husband of seller Clark, the agent with whom the defendant had dealt; and that the defendant had personally inspected those particular premises before signing the check. 172 Kan. at 288. It held:

"It cannot be said defendant is being in any way misled by the use of that description. He knew exactly the property for which he was bargaining, and that it was the property described by its street address on the check. The statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and courts will, so far as possible, refuse to allow it to be used as a shield to protect fraud and as a means to enable one to take advantage of his own wrong." 172 Kan. at 289.

In *Coombe,* after rejecting defendant's argument that the property description "E.B. wharf" was too indefinite to satisfy the statute of frauds, the United States Supreme Court then more fully identified the particular property through extrinsic evidence, including a letter where the defendant stated "Having agreed to sell you my individual half-interest in the Eastern Branch wharf and premises." The Court concluded "that the ambiguity is fully removed." 26 U.S. at 653.

Accord *Nauman v. Powers,* 147 Kan. 641, 78 P.2d 27 (1938); see also *Steele v. Nelson,* 139 Kan. 559, 32 P.2d 253 (1934) (Contract did not violate statute of frauds when it failed to state names of the parties to be bound in the body of the contract; identities supplied by extrinsic evidence, *e.g.,* the defendant's knowledge.). *Cf. DeLorean,* 7 Kan. App. 2d 246 (oral agreements and memoranda properly admitted to explain ambiguous guaranty.); *Neitzel,* 769 F. Supp. at 349 (ambiguity of guaranty does not render it unenforceable under the statute of frauds; may be explained by extrinsic evidence).

In short, remand will determine whether, like the properties in *Clark* and *Coombe* that were more fully identified by extrinsic evidence, "my proportional ownership share" can be more fully identified by extrinsic evidence. Similar to the *Clark* court, the district court will consider whether the Bank was requiring the separate guaranties of Botkin, LLC debt based upon the guarantors' proportional ownership share in Botkin, LLC. Or, the court will consider whether the Bank was requiring the separate guaranties of Botkin, LLC debt based upon the guarantors' proportional ownership share in some other single entity besides Botkin, LLC, *e.g.*, General Motors Corporation, or in the same multiple entities in which all guarantors happened to possess an ownership interest. The document in the Bank's possession on Botkin, LLC letterhead captioned "Member totals as of December 7, 2001," which specifies ownership interests, *e.g.*, 3.88158% for David Botkin, and 2.58767% for Stan Botkin, is one example of the extrinsic evidence that may be considered. Similar documents of other dates, or oral evidence, may also be considered to clarify the ambiguity, and solve the mystery of the parties' specific intent.

The Court of Appeals not only remanded with instructions to resolve the ambiguity of "my proportional ownership share" with parol evidence, but it also held that if the parties failed to satisfy the district court of their enforceable intent regarding that phrase at the time of execution, then "the guaranties must be enforced without limitation against each guarantor." *Botkin*, 33 Kan. App. 2d at 921. We disagree.

Specifically, we conclude, as a matter of law, that some tension exists in the language in paragraph 4, *i.e.*, between limiting liability to "my proportional ownership share" and "if no amount is stated, the Undersigned shall be liable for all indebtedness without any limitation as to amount." See *DeLorean*, 7 Kan. App. 2d 246, Syl. ¶ 1 (whether a written guaranty is ambiguous is a question of law to be decided by the court). Because the parties did not leave blank the amount of the limitation on liability, but instead agreed that liability would be based upon the phrase the Bank typed there— "my proportional ownership share"—the parties' intent to limit liability is evident. Moreover, we strictly resolve any tension against

the Bank as drafter of the guaranty. See *DeLorean,* 7 Kan. App. 2d 246. We hold that remand is only to determine what is meant by "my proportional ownership share." Accordingly, the remaining issues on appeal, *i.e.*, whether the guarantors waived the statute of frauds defense and whether the waiver is contrary to public policy, are moot.

The Court of Appeals is affirmed in part and reversed in part. The district court is reversed, and the case is remanded for a determination in accordance with the instructions in this opinion.