NOT DESIGNATED FOR PUBLICATION

No. 124,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

K-STATE FEDERAL CREDIT UNION,
*Appellee*,

v.

CHAD PARRY GLASSFORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed October 7, 2022. Affirmed.

*Chad Parry Glassford*, appellant pro se.

*Aaron R. Bailey* and *Rebecca M. Henderson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellee.

Before WARNER, P.J., GREEN and HILL, JJ.

PER CURIAM: Chad Parry Glassford, acting pro se, appeals the trial court's order requiring him to repay the remaining balance of his loan from K-State Federal Credit Union as well as certain court costs, totaling $14,899.07 plus interest. Nevertheless, we affirm the trial court's order because Glassford's arguments before us are unpreserved, inadequately briefed, and otherwise unpersuasive.

1

On August 7, 2019, K-State Federal Credit Union loaned Glassford $15,927.50 so he could buy a 2012 Chevy Silverado. Under his loan and security agreement with the credit union, his annual interest rate was 12.5%. And he had to repay the loan at a rate of $357.99 per month. Also, under his agreement, the credit union had a security interest in Glassford's truck, which it valued at $17,875 based on the National Automobile Dealers Association (NADA) Guide.

On October 15, 2019, Glassford refinanced his loan with the credit union. Under his refinanced loan and security agreement with the credit union, Glassford borrowed $19,725.11. His annual interest rate was 18%. And he had to repay the loan at a rate of $480 per month. Most importantly, under his refinanced agreement, the credit union still had a security interest in Glassford's truck, which it now valued at $18,900 based on the NADA Guide.

Sometime in January 2020, Glassford totaled his truck. The credit union offered all persons with car loans to carry Guaranteed Asset Protection (GAP) insurance. So, when Glassford told the credit union that he totaled his truck, it started working with Glassford and his insurance company to process his GAP insurance claim for the totaled truck. In the end, though, the credit union received only $7,178.60 from Glassford's insurance claim. This meant that Glassford still owed the credit union $13,993.01 for his loan.

Highly summarized, Glassford knew the truck that he bought was salvaged when he bought it. Before buying the truck from the dealership, he signed a document recognizing that the truck was salvaged. Yet, in applying for his loan and GAP insurance, Glassford never explained that the truck was salvaged. Rather, he gave the credit union his purchase contract with the dealership, which never noted that the truck was salvaged.

Similarly, although Glassford's GAP insurance contract explicitly stated that a "salvaged or previously salvaged title vehicle" did not qualify for GAP insurance, when he signed the contract, he affirmed that he had read, understood, and agreed with the contract. As a result, the credit union lent Glassford more than his truck was worth because it valued his truck under the assumption it was not a salvaged vehicle.

Eventually, the credit union sued Glassford for the outstanding balance of his loan. Although Glassford has not included the magistrate judge's ruling in the record on appeal, we know that a magistrate judge who considered the credit union's case ruled against the credit union. We know this because Glassford has included the credit union's notice of appeal from the magistrate judge's decision to the trial court under K.S.A. 60-2103a in our record on appeal. See K.S.A. 2021 Supp. 60-2103a(a) (requiring a party to appeal the decision of a magistrate judge who is not a licensed attorney to the trial court before appealing to this court).

In any case, following an evidentiary hearing where the credit union's vice president and Glassford testified, the trial court reversed the magistrate judge's decision. During this hearing, without objection, the credit union admitted into evidence copies of Glassford's original loan and security agreement, Glassford's refinanced loan and security agreement, Glassford's purchase contract with the dealership, Glassford's vehicle history report recognizing that he bought a salvaged truck from the dealership, and Glassford's GAP insurance contract. Relying on this evidence, the trial court found that Glassford never told the credit union or his insurance company that he knew his truck was a salvaged vehicle. It found that at the very least, by signing a GAP insurance contract stating that salvaged vehicles were ineligible for GAP insurance, Glassford should have known that he needed to tell the credit union about his truck being a salvaged vehicle when applying for the loan. As a result, it ordered Glassford to pay the credit union $14,899.07. This was the outstanding balance on Glassford's loan plus interest as well as court costs.

Glassford timely appeals this ruling.

ANALYSIS

"[T]he rules governing the interpretation and construction of contracts generally apply to the interpretation or construction of a contract of guaranty." *Botkin v. Security State Bank*, 281 Kan. 243, 248, 130 P.3d 92 (2006). Because contract interpretation constitutes a question of law, we exercise unlimited review when analyzing issues involving the interpretation and effect of contracts. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). Likewise, we exercise unlimited review when analyzing whether an appellant has followed the proper procedures to preserve an argument for appeal. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012).

On appeal, Glassford's pro se arguments are somewhat confusing. He seemingly contends that we should reverse the trial court for three reasons: (1) because the credit union failed to tell him what witnesses it planned to call and what exhibits it planned to admit at his evidentiary hearing; (2) because the credit union "falsified" the copy of his GAP insurance contract that it admitted into evidence; and (3) because the credit union's conduct violated "[t]he Consumer Protection Act of 1986." The credit union responds that we should not consider Glassford's complaints because he raises them for the first time on appeal. Alternatively, the credit union argues that Glassford's complaints are baseless since he signed a binding contract with it to repay the loan.

We begin our analysis by noting that although courts should construe a pro se appellant's argument liberally so that relief may be granted when warranted by the facts of the case, this simply means that the substance of the pro se appellant's argument controls over its label. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022). In turn, when considering pro se arguments, "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" 61 Kan. App. 2d at 501 (quoting *United States v.*

4

*Dunkel*, 927 F.2d 955, 956 [7th Cir. 1991]). It is not our job to scour the record before us to understand the pro se appellant's arguments. *Joritz*, 61 Kan. App. 2d at 498. Additionally, this means that like an appellant who is represented by counsel, a pro se appellant must follow our rules of procedure and evidence to preserve his or her argument for appeal. 61 Kan. App. 2d at 498.

K.S.A. 60-404 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." It is also a well-known rule that absent certain exceptions, a party cannot raise an argument before us that he or she did not raise before the trial court. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Indeed, Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36) states that an appellant must start each argument by citing the appropriate standard of review and pinpointing "the location in the record on appeal where the issue was raised and ruled on." It further states that when "the issue was not raised below, there must be an explanation why the issue is properly before the court." Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36).

Our Supreme Court has held that violating Rule 6.02(a)(5) is akin to inadequately briefing the issue being raised for the first time on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Meanwhile, when an appellant inadequately briefs an issue, the appellant waives and abandons that issue for appeal. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). To adequately brief any argument, the appellant must do more than raise an argument incidentally in his or her brief without analysis. 312 Kan. at 246; see also *Gilkey v. State*, 31 Kan. App. 2d 77, 82, 60 P.3d 351 (2003) (conclusory statements without evidentiary support constitute inadequately briefed arguments). Also, to adequately brief any argument, the appellant must cite supporting legal authority or

5

explain why his or her argument is sound despite no supporting legal authority. *Meggerson*, 312 Kan. at 246.

Here, Glassford's arguments violate all the preceding rules. When testifying at his evidentiary hearing, although he briefly complained about the credit union not sending him a witness and exhibit list, he never asked the trial court to continue the hearing for this reason. As for his apparent assertion that the credit union falsified his GAP insurance contract, Glassford never complained about this exhibit being falsified below. Instead, when the credit union successfully moved to admit his GAP insurance contract into evidence, he remained silent. And as for his apparent Consumer Protection Act (CPA) argument, although the credit union had previously mentioned Glassford having a possible CPA claim against the car dealership, Glassford never argued any CPA violation before this appeal. In addition, outside of *his single reference* to the Consumer Protection Act of 1986 at the end of his appellant's brief, Glassford cites no legal authority to support *any* of his arguments on appeal.

So, Glassford raises each of his arguments for the first time on appeal without explaining why his newly raised arguments are properly before us. He also cites no legal authority to support his newly raised arguments; this includes any citation to the proper standard of review. As a result, Glassford has violated Rule 6.02(a)(5)'s requirements to explain why we should consider his new arguments for the first time on appeal and to start each issue by citing the applicable standard of review. Following our Supreme Court precedent, we hold Glassford's arguments inadequately briefed and thus abandoned based on this violation. *Daniel*, 307 Kan. at 430 (explaining that an appellant inadequately briefs and abandons an issue by violating Rule 6.02[a][5]). Also, because Glassford never objected when the credit union admitted a copy of his allegedly falsified GAP insurance contract into evidence before the trial court, we further hold that Glassford failed to preserve this particular argument for appeal. See K.S.A. 60-404.

Notwithstanding the preceding, we point out some other flaws with Glassford's arguments. To begin with, nothing in the record on appeal indicates that there was some sort of discovery order requiring the credit union to disclose its witnesses and exhibits before the evidentiary hearing. Thus, from our review of the record on appeal, the credit union did nothing wrong by not telling Glassford what evidence it intended to present at his evidentiary hearing. Yet, even if we assumed that the credit union erred by failing to give Glassford a witness and exhibit list before his evidentiary hearing, Glassford never explains how the credit union's failure to turn over this information prejudiced his substantial rights. K.S.A. 2021 Supp. 60-261 requires us to hold any error not affecting a party's substantial rights harmless. Thus, Glassford's failure to explain how he was prejudiced is fatal to his assertion that we should reverse the trial court's order based on the credit union's failure to tell him what evidence it intended to present at his evidentiary hearing before that hearing.

Next, we stress that Glassford's argument concerning the disputed copy of his GAP insurance contract that the credit union admitted into evidence hinges on his testimony that although he signed the first page of the GAP insurance contract, he could not recall reading the remaining pages of his contract. Significantly, the second page of Glassford's contract explained that his policy did not cover salvaged vehicles. But even if we accepted Glassford's testimony as true, assuming for argument's sake that Glassford cannot remember reading certain pages of his GAP insurance contract, this does not mean that the credit union falsified the copy of the GAP insurance contract that it admitted into evidence. In fact, Glassford's argument contradicts itself. If Glassford only read the first page of his GAP insurance contract, then how could Glassford know that the credit union falsified the remaining pages of his contract?

In summary, we affirm the trial court's order requiring Glassford to pay the credit union the outstanding balance of his loan plus interest as well as court costs because Glassford's arguments before us are unpreserved, inadequately briefed, and otherwise unpersuasive.

Affirmed.